## THURMAN *vs.* THE STATE.

1. A mulatto is defined to be, "a person that is the offspring of a negress by a white man, or of a white woman by a negro."

2. The Legislature is presumed to use words in their proper signification, unless the contrary in some way appears. There is nothing in the language of our statutes, or in the popular use of the term, mulatto, to show that it has been used in the Legislation of this State otherwise than in its common acceptation.

3. The offspring of a white mother and a mulatto father is not a mulatto, within the meaning of the statute, prescribing the punishment for rape, &c., when committed by a "slave, free negro, or mulatto."— (Clay's Dig. 472, § 4.)

ERROR to the Circuit Court of Russell. Tried before the Hon. John J. Woodward.

THE plaintiff in error was indicted for a rape on a white woman. The case will be fully understood from the opinion of the court.

Thurman v. The State.

BELSER, for the plaintiff in error:

1. The word mulatto is a term used to denote the offspring of a union between a white and a negro. He is strictly speaking, a person begotten between a white and a black.—Brand's Encyclopedia of Science, Literature and Art; Webster's Dictionary, p. 545; Bouvier's Law Dictionary, p. 170; The Inhabitants of Medway v. The Inhabitants of Natic, 7 Mass. 88; State v. R. Scott, 1 Bail. 273; State v. Mary Hayes, ib. 275.

2. The issue of a mulatto and a white, is not a mulatto.—*Supra* 7 Mass. 88; Brand's Ency. of Sci., Lit. and Art, (word mulatto.)

3. The charge of the court is wrong. It invaded the province of the jury. A mulatto is to be known, not solely by color, kinky hair, or slight admixture of negro blood, or by a greater admixture of it not amounting to one-half, but by reputation, by his reception into society, and by the exercise of certain privileges.—White v. Tax Collector, 3 Rich. 136; State v. Davis, 2 Bail. 558; State v. Cantey, 2 Hill, (S. C.) 614; Rice's Dig., 2 vol. p. 111, § 32; Genty v. McMorris, 3 Dana, 386.

4. Reasoning from analogy, our statutes are against the views of the court.—Clay's Dig. 600, § 8.

BALDWIN, Attorney General, for the State.

The charge given in this case was in substance, that if the jury believed there was (a distinct) admixture of negro blood with the European or white race, the individual was to be denominated a mulatto.—The State v. Davis et al., 2 Bail. 558; The State v. R. Scott, 1 ib. 270; The State v. Wright, 1 Hen. & Munf. 133. The case in 7 Mass. 88, stands unsupported as to the definition of the word mulatto. See the definition of the word mulatto in Webster's Dictionary (unabridged,) 736, where it is defined to be "*a mixed breed*," from *mulus*, (latin,) any animal produced by a mixture of different species, and *mulatre*, (fr.) born from different colored people.—Surrenn's French Dictionary 393. The common acceptation of the term mulatto is the definition given by the court, to wit, any admixture of the white and African race.

PARSONS, J.—It appears that the defendant below, Thurman, must have been convicted on the second count, which de-

scribes him as a free mulatto. The only question below, which it is necessary for us to decide is, whether, because he is descended from a negro stock on one side, he is necessarily a mulatto. That he had "kinky hair and yellow skin," as stated in the bill of exceptions, is certainly evidence tending to prove that he is a mulatto, but, as we think, it is not conclusive. The prisoner's counsel asked the court to charge the jury " that if they were satisfied from the testimony that the prisoner was the offspring of a white mother and a mulatto father, or a father of any other cross of the negro and the white race, that then the prisoner was not a free negro," (the first count described him as such,) " or mulatto as charged," which the court refused, but gave a charge which it is not necessary to state, because it is inconsistent with the opinion we have formed in respect of the charge which was refused. He was indicted under the following words: "Every slave, free negro, or mulatto, who shall commit, or attempt to commit the crime of rape on any white female, and be thereof convicted, shall suffer death."—Clay's Dig. 472, § 4.

A mulatto is defined to be a " a person that is the offspring of a negress by a white man, or of a white woman by a negro." With this I think, the best lexicographers agree substantially. In Massachusetts there is a statute declaring marriages between white persons and mulattoes to be null and void. A marriage took place there between a white man, and a woman, who was the child of a mulatto man by a white woman, and the court held that the child of such parents was not a mulatto. It was their unanimous opinion that a mulatto is a person begotten between a white and a black, and that this agreed with the popular use of the term.—Medway v. Natic, 7 Mass. 88. Our Legislature must be understood to have used the word in its proper signification, unless the contrary in some way appears. With a view to ascertain whether it was used in the statute in any other sense, I have looked over our laws relative to slaves, free negroes, mulattoes, indians, and free persons of color, for all these appellations are used in the statutes. But I find nothing which is sufficiently clear to authorise a conclusion of the kind. Some of the statutes relate to " free negroes and mulattoes," others to "free persons of color." The safe inference is, that some of the statutes were intended to include more persons than others.

"Free persons of colour," may have been intended to include persons, even from the African stock on one side, who were not mulattoes. By one of the statutes, it clearly appears that the Legislature took the distinction between mulattoes and such as were more remote from the negro stock on one side. By that act "all mulattoes, indians, and all persons of mixed blood, descended from negro or indian ancestors, to the third generation inclusive, though one ancestor of each generation may have been a white person, whether bond or free, shall be taken and deemed to be incapable in law to be witnesses in any cause whatsoever, except for or against each other."—Clay's Dig. 600, § 8. If the act under consideration had contained also the words "and all persons of mixed blood" or "other free persons of color" or the like, it would have embraced persons descended from the negro stock on one side, though they might not be mulattoes. Taking it literally, it does not extend beyond mulattoes. Penal statutes are not to be extended by construction, more especially upon doubtful grounds. If this rule is violated, the fate of accused persons is decided by the arbitrary discretion of judges, and not by the express authority of the laws.—Dwarris on Statutes, 737, and the cases cited. The Code, chap. 8, § 42, enacts that the preceding provisions shall embrace all offences committed by free negroes or other persons of color, except so far as they are exempted therefrom, either expressly or by enactment of a different law applying to them."—Clay's Dig. 445, § 42. Therefore, if the accused is neither a free negro nor mulatto, still there is another law that embraces his case, and the atrocity of the crime, of which he is accused, was a proper matter for Legislative, though not for judicial consideration. If the Legislature had intended to describe a caste, to include negroes and all persons descended from a negro stock on one side within a certain degree, and to subject them all to the same penalties, it is to be presumed that this would have been done by some clear language. If the statute against mulattoes is by construction to include quadroons, then where are we to stop? If we take the first step by construction, are we not bound to pursue the line of descendants, so long as there is a drop of negro blood remaining? If not, the point where we should stop can only be ascertained by judicial discretion. This discretion belongs to the Legislature. We have been refered to the case of The State v. Davis &

Hanna, 2 Bail. 559, decided by the Court of Appeals of S. C. The opinion there is, perhaps, inconststent with our opinion in this case. The case turned on the definition of the word "mulatto" or "person of color," as used in several acts of Assembly. They held that a quadroon, or the descendant of a mulatto and a white, was to be accounted a mulatto or person of color. The statutes were not brought to view in the opinion, so far as to show in what sense the Legislature used the word mulatto. If the language of the act included, expressly or by necessary construction, the words mulatto or other person of color, then there is no difference between that opinion and ours in this respect, except what results from the difference of the statutes there and here. But the court spoke of the popular definition of the word mulatto in that State, and it was certainly right to consider that as a means of arriving at the intention of the Legislature. But the true question at last is, in what sense was the word used by the Legislature? It is to be presumed it was used in its true literal meaning, unless it appears otherwise, which is not the case, certainly not clearly the case under our statutes. It appears by the case in Massachusetts and by the case in S. Carolina that the popular meaning of the word differs in those States. In a great degree our population is made up of extracts from all the States, as well as from other countries, and we cannot say that there is any settled popular meaning attached to that word in this State, which is different from its true meaning. The judgment is reversed and the cause remanded.