# Linton *v.* The State.

*Indictment for Miscegenation.*

1. *Sufficiency of indictment.*—An indictment which charges "that John B., a negro man, and Martha L., a white woman, did intermarry, or live in adultery or fornication with each other" (Code, § 4018), sufficiently charges the offense of miscegenation.

2. *Profert of person as evidence.*—The white woman alone being on trial, under an indictment for miscegenation, the prosecution may make profert of the person of the man, in order that the jury may determine by inspection whether he is a negro within the statutory definition.

3. *Constituents of offense; negro and mulatto; variance.*—Under statutory provisions (Code, § 2, subd. 5), the word *negro* includes *mulatto* as therein defined; and when an indictment for miscegenation describes the man as a *negro,* a conviction may be had on proof that he was a *mulatto* within the prohibited degrees.

4. *Same; continuance or duration of connection.*—A conviction may be had under such an indictment, if the jury believe from the evidence that the parties lived together in adultery, even for a single day, intending to continue the illicit connection, although there may have been no agreement or understanding between them to that effect.

5. *Proof of character for chastity.*—The woman alone being on trial, it is not competent for the prosecution to attack her character for chastity.

6. *Charge as to doubt authorizing acquittal.*—In a criminal case, only a reasonable doubt authorizes an acquittal; and a charge asked, which claims an acquittal, if the jury entertain "a doubt" as to any material fact, is properly refused.

FROM the Circuit Court of Pike.

Tried before the Hon. JOHN P. HUBBARD.

The indictment in this case charged, in a single count, "that John Blue, a negro man, and Martha Ann Linton, a white woman, did intermarry, or live in adultery or fornication with each other, against the peace," &c. A severance was granted, and each defendant was tried separately. A demurrer to the indictment was interposed by John Blue, which was overruled; but the record does not show what grounds of demurrer, if any, were specified, nor does it show that any demurrer was interposed by Martha Linton. On the trial of Martha Linton, as the bill of exceptions shows, the prosecution adduced two witnesses, who testified that, one night about nine o'clock, a few months before the finding of the indictment, they went, in company with a bailiff, to a house in which John Blue and George Blue, brothers, were

[Linton v. The State.]

living, and which was situated in said county, on land be-
longing to Martha Linton's mother, and distant from her
house about a half-mile; that they found the front door
closed, and went around to the back door, where a dog barked
at them; that the house consisted of but one room, which
had a fire-place in one end, and two beds in the other, with a
mattress on the floor between them; that, on opening the
door, George Blue was first seen to go from the fire-place to
the back part of the room, while John Blue was found in bed,
undressed, and the defendant under the bed, in her night
clothes; that the defendant's clothes were handed to her, and
she put them on while under the bed; and all three of the
parties were arrested. One of said witnesses testified, also,
that on passing said house one morning about eleven o'clock,
about three weeks before that night, he saw the defendant
"come to the door and throw something out into the yard
from a bread-tray." The witness testified, also, "that he
knew John Blue well, and that he was a negro; but, on cross-
examination, said that he was a mulatto, and that his mother
was also a mulatto, but he did not know who his father was."
The State "then asked to make profert of John Blue to the
jury," and the court allowed it, against the objection and
exception of the defendant.

On this evidence, the court charged the jury, "that al-
though John Blue was a mulatto, they might convict the
defendant of the higher offense charged in the indictment, if
the evidence otherwise showed beyond a reasonable doubt
that she lived in adultery with him within the period covered
by the indictment." The defendant excepted to this charge,
and asked the following charges in writing, duly excepting
to the refusal of each: (1.) "If the jury believe the evi-
dence, they must find the defendant not guilty of felonious
adultery, as charged in the indictment." (2.) "In adultery
cases, it is permissible for the State to show that the female
defendant is a lewd woman—that her character for chastity
is bad." (3.) "If the jury believe the evidence, they must
find the defendant not guilty." (4.) "If the evidence leaves
in the mind of the jury a doubt whether John Blue is a negro
or a mulatto, they must find the defendant not guilty."
(5.) "The evidence must not only show, beyond a reason-
able doubt, that John Blue and the defendant had sexual
intercourse with each other, but also that there was an agree-
ment between them to keep up or continue such intercourse."
(6.) "If the circumstances in evidence conduce as strongly

[Linton v. The State.]

to show that the act of sexual intercourse was committed with George Blue as with John, and the jury have a doubt as to which, it is their duty to acquit; or unless the jury are satisfied from the evidence, beyond a reasonable doubt, that the sexual intercourse, with an agreement to continue, was committed with John Blue, they must acquit." (7.) "The State must prove, beyond a reasonable doubt, that John Blue is a negro; and if the evidence shows that he is a mulatto, then the defendant is not guilty." (8.) "It is not sufficient to convict, to show that the defendant had one act of sexual intercourse with John Blue, without more, but the evidence must show, beyond a reasonable doubt, that there was an agreement between the two to continue that illicit relation." (9.) "It is competent for the jury to look to the fact, if it be proved, that the defendant was at a house which was the home of two men, one of whom (John Blue) was married; and if they have a doubt as to which one of the two the defendant had sexual intercourse with, if with either, then they must acquit her."

WM. L. MARTIN, Attorney-General, for the State.

McCLELLAN, J.—The indictment in this case sufficiently charges the crime of miscegenation against the appellant, a white woman, and John Blue, a negro man.—*Pace et al. v. State*, 69 Ala. 231; Code, § 2.

There was no error in allowing the State to make profert of the person of John Blue to the jury, in order that they might determine by inspection whether he was a negro, as charged in the indictment. There had been a severance in the trials of the appellant and Blue, and evidence of this character is clearly competent to show sex (*White v. State*, 74 Ala. 31); age (*State v. Arnold*, 13 Ired. 184); personal resemblance (*State v. Woodruff*, 67 N. C. 89; *State v. Britt*, 78 N. C. 439); color and race (*Garvin v. State*, 52 Miss. 207; *Gentry v. McMinnis*, 3 Dana, (Ky.) 385), and many like facts in regard to the personality of the defendant himself, or of any other individual involved in the issue.—Whart. Cr. Ev. §§ 311 *et seq.*

Clause 5, section 2, of the Code defines the terms "negro" and "mulatto," when and as used in the Code, and makes the former include the latter, and the latter to mean "a person of mixed blood, descended on the part of the father or mother from negro ancestors to the third generation inclu-

sive, though one ancestor of each generation may have been a white person." Interpreted in the light of these definitions, section 4018, for a violation of which the appellant was convicted, may be read as if the words "or the descendants of any negro," &c., to the word "intermarry," were omitted, since the preceding word "negro" embraces all descendants of a negro to the third generation, though one ancestor of each generation be a white person. And a conviction had on proof that one of the parties was a mulatto would not be bad for variance, since "mulatto" and "negro" are interchangeable terms throughout this body of laws. The contention of appellant, that she could not be convicted of the felonious grade of the offense charged, if it appeared that her paramour was a mulatto, the indictment charging cohabitation with a negro, proceeded, doubtless, on the meaning of those terms unaffected by the statute to which we have referred—that is, that a negro, generically considered, is a descendant of the whole blood from the black, woolly-headed race of Southern Africa (*Felix v. State*, 18 Ala. 726); and that a mulatto is of the half blood, "a person who is the offspring of a negress by a white man, or of a white woman by a negro."—*Thurman v. State*, 18 Ala. 278. Upon whatever ground the contention was predicated, it is untenable; and the charges of the primary court, to the effect that conviction of felony could be had if the man were shown to be a mulatto, as well as its refusals of charges requested which asserted, or were based on the contrary proposition, were free from error.

The charges requested by the defendant, to the effect that there could not be a verdict of guilty, unless the jury should find there was "an agreement" or "understanding" between the parties that sexual intercourse should continue, palpably tended to mislead the jury into a belief that, although the parties for a given time, a single day, it may be, lived together in adultery intending to continue that relation, yet they could not be convicted, unless this intention to so continue was evidenced by an agreement, a compact to that effect, and notwithstanding the circumstances might have clearly indicated such intention aside and apart from any agreement. The charges were properly refused.—*Hall v. State*, 53 Ala. 463; *Smith v. State*, 39 Ala. 554.

Charge No. 4 asked by the defendant and refused, was purely an argument, based on the failure of the State to show that the character of the defendant for chastity was

bad. Moreover, the charge was affirmatively bad. On the trial of the female defendant (and she alone was on trial here), it is *not* competent for the State to attack her character for chastity.—*Blackman v. State,* 36 Ala. 295.

The remaining requests for instructions base defendant's right to an acquittal upon the jury's having a doubt, whether reasonable or not is not hypothesized, as to whether she lived in adultery with John Blue, as charged, or with another named person. Their refusal was manifestly proper. *Humbree v. State,* 81 Ala. 67; *Jones v. State,* 79 Ala. 23.

We discover no error in the record, and the judgment of the Circuit Court of Pike is affirmed.

NOTE —The case of *John Blue v. The State,* under the same indictment, was affirmed on the authority of the above case.