## WILSON v. STATE.   (1 Div. 527.)

(Court of Appeals of Alabama. June 10, 1924. Rehearing Denied June 30, 1924.)

**1. Indictment and information ⬅110(3)—Indictment for miscegenation, following statute, held sufficient.**

Indictment for miscegenation, alleging that defendant, a negro or descendent of a negro, and M., a white person, did intermarry or live in adultery or fornication with each other, being substantially in Code form, was not, in view of Code 1907, § 7132, subject to demurrer as charging no offense, and as not alleging that defendant was a negro or descendant thereof to third generation.

**2. Miscegenation ⬅1—Statute not invalid.**

Statute under which indictment for miscegenation was drawn *held* not violative of the federal Constitution, nor void because it discriminates against one who is charged with being a negro.

**3. Criminal law ⬅450—Permitting witness to state defendant prosecuted for miscegenation was negro held without error.**

In prosecution for miscegenation, there was no error in permitting witness to testify she knew defendant, and that she was a negro woman.

**4. Criminal law ⬅1036(1), 1054(1)—Testimony received without objection or exception not ground for reversal.**

In miscegenation prosecution, where witness without objection or exception was permitted to state that defendant had been picked up by police department many times and was locked up with colored women, notwithstanding that it was immaterial and irrelevant and tended to prejudice jury, it cannot, under Code 1907, § 6264, be considered on appeal.

**5. Criminal law ⬅1045—Lower court not to be put in error in absence of adverse ruling.**

The Court of Appeals is without authority to put the lower court to error, in absence of adverse ruling to defendant.

**6. Criminal law ⬅448(16)—Witness cannot state in shorthand way confession was freely and voluntarily made.**

State witness cannot in shorthand way state that confession was freely and voluntarily made.

**7. Criminal law ⬅1170½(3)—Error in overruling objection to question cured by witness' failure to answer.**

In miscegenation prosecution, error in overruling objection to question to state's witness as to whether what defendant had said to him was said freely and voluntarily was cured by failure of witness to answer.

**8. Criminal law ⬅1162—Erroneous ruling if without injury does not require reversal.**

Where no injury results to defendant even though ruling complained of is erroneous, reversal will not follow.

**9. Miscegenation ⬅6—Question whether defendant was a negro or descendent thereof held for jury.**

In prosecution for miscegenation, evidence as to whether defendant was a negro properly *held* for jury.

**10. Miscegenation ⬅5—Not incumbent on state to fully trace antecedents of defendant to establish race.**

In miscegenation prosecution, it is not incumbent on state to fully trace antecedents of defendant to establish race, and witness, if he knows such to be a fact, may, in view of Code 1907, § 2, par. 5, testify as to defendant's race.

**11. Criminal law ⬅386—Telephone conversations held admissible.**

In miscegenation prosecution, it was competent for state to prove telephone conversation between defendant and state witness; credibility and weight thereof being for jury.

**12. Miscegenation ⬅5—Testimony held immaterial.**

In miscegenation prosecution, question to defendant as to whether her mother told her how old she was when her mother died was properly sustained as immaterial.

**13. Criminal law ⬅421(3)—Question held to call for hearsay answer without showing that party making statement was dead.**

In miscegenation prosecution, question to defendant as a witness as to whether her mother told her how old she was when her mother died called for hearsay testimony without showing that at time of trial defendant's mother was dead.

**14. Criminal law ⬅421(3)—Statement by deceased parent admissible to prove child's age.**

Before rule which permits statement of deceased parent in reference to child's age in evidence can be invoked, death of parent must be first shown.

**15. Criminal law ⬅421(1)—Statements by mother of defendant held inadmissible.**

In miscegenation prosecution, there was no error in overruling objection to question to defendant as to whether her mother had told her that her mother was a Choctaw Indian, there being no showing that defendant's mother was dead.

**16. Criminal law ⬅351(1)—Question whether defendant's counsel cautioned her not to talk about case held immaterial.**

Question whether defendant's counsel had cautioned her not to talk to anybody about case was immaterial, and court without error declined to allow it to be proved.

**17. Witnesses ⬅319—Defendant testifying in own behalf subject to impeachment.**

In miscegenation prosecution, where defendant testified as witness, she was subject to impeachment as other witness.

---

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**18. Witnesses ⬦⇒338—Evidence of general bad character admissible to impeach witness.**

Evidence of general bad character is admissible to impeach witness and need not be limited to question of truth and veracity.

**19. Criminal law ⬦⇒450—Question whether witness believed statement of defendant properly rejected.**

In miscegenation prosecution, there was no error in sustaining objection to question of defendant's counsel to state witness as to whether he believed defendant was telling the truth when she told him she was a negro; inquiry being argument only with witness.

**20. Criminal law ⬦⇒753(1)—Court unauthorized to direct verdict where evidence conflicted.**

In criminal prosecution, where evidence as to material issues was in conflict, court was unauthorized to direct verdict.

**21. Criminal law ⬦⇒753(1) — General charge never given when evidence tends to make case against party asking it.**

The general charge should never be given when there is any evidence, however weak or inconclusive, tending to make case against party who asks it.

**22. Criminal law ⬦⇒789(15)—Refusal of charge not to convict if there was probability of innocence held without error.**

In criminal prosecution, there was no error in refusing charge that, if there was probability of defendant's innocence, not to convict.

**23. Criminal law ⬦⇒829(1)—Refusal of charges covered by charge given not error.**

Refusal of charges which were fairly and substantially covered by court's oral charge was not error.

Appeal from Circuit Court, Mobile County; Safford Berney, Judge.

Sarah Wilson, alias, etc., was convicted of miscegenation, and appeals. Affirmed.

Certiorari denied by Supreme Court, 211 Ala. 613, 101 South. 423.

The indictment is as follows:

"The grand jury of said county charge that, before the finding of this indictment, Sarah Wilson, alias Sarah Simmons, alias Shreveport Sarah, whose name is to the grand jury otherwise unknown, a negro or a descendant of a negro, and Charles Medicus, a white person, did intermarry or live in adultery or fornication with each other against the peace and dignity of the state of Alabama."

These, among other grounds of demurrer, were assigned to the indictment:

"(1) Said indictment charges no offense.

"(2) Said indictment does not allege that the defendant is a negro, or a descendant of a negro to the third generation.

"(3) For aught that appears from the indictment, the defendant may be the descendant of a negro beyond the third generation, and, if such be a fact, the indictment charges no offense.

"(4) Said indictment charges, in the alternative, that the defendant is a negro, or the descendent of a negro, but does not charge that she is a descendent of a negro to the third generation, inclusive."

Refused charge 4 is as follows:

"(4) Gentlemen of the jury, if there is a probability of the defendant's innocence, you cannot convict the defendant."

Edward J. Grove, of Mobile, for appellant.

It was error to permit the state's witness to testify that what defendant said to him was voluntary. Jones v. State, 156 Ala. 175, 47 South. 100. Defendant should have been permitted to state what her mother told her as to her age at the time of the death of the mother's mother and that she was an Indian. Elder v. State, 124 Ala. 69, 27 South. 305; Young v. Shulenberg, 165 N. Y. 385, 59 N. E. 135, 80 Am. St. Rep. 730. Objection to the question to a witness by the state as to defendant's general reputation should have been sustained. Linton v. State, 88 Ala. 216, 7 South. 261; Henderson v. Hosfeldt, 124 Ala. 391, 27 South. 415. The general affirmative charge should have been given for defendant. Bartelle v. U. S., 2 Okl. Cr. 84, 100 Pac. 45; Flores v. State, 60 Tex. Cr. R. 25, 129 S. W. 1111; Jones v. Comm., 80 Va. 538. Charge 4 should have been given for defendant. Adams v. State, 175 Ala. 8, 57 South. 591.

Harwell G. Davis, Atty. Gen., and Lamar Field, Asst. Atty. Gen., for the State.

The indictment was not subject to demurrer. Ellis v. State, 42 Ala. 525. There was no error in rulings on evidence. Parker v. State, 118 Ala. 655, 23 South. 664; Jones v. State, 156 Ala. 175, 47 South. 100; Metcalf v. State, 16 Ala. App. 389, 78 South. 305; White v. Strother, 11 Ala. 720; Stone v. State, 208 Ala. 50, 93 South. 706. Refused charge 4 was bad. Edwards v. State, 205 Ala. 160, 87 South. 179.

BRICKEN, P. J. [1] The charge, by indictment, against this defendant was the offense of miscegenation; the indictment containing the averment that this defendant (naming her) being a negro or a descendant of a negro, did intermarry or live in adultery or fornication with one Charles Medicus, a white person. The indictment is substantially in Code form and is therefore not subject to the first four grounds of demurrer interposed. Code 1907, § 7132.

[2] The statute under which the indictment in this case is drawn, or preferred, is not violative of the federal Constitution, nor is it null and void as insisted by demurrer because it discriminates against the defendant who is charged with being a negro. These questions have been decided many times by the Supreme Court of this state adversely to

⬦⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

the contention here made. Pace v. State, 69 Ala. 231, 44 Am. Rep. 513, and cases cited. The court properly overruled the demurrers to the indictment. Linton v. State, 88 Ala. 216, 7 South. 261.

There was no contention upon the part of the state that this defendant and the said Medicus had intermarried; but the insistence was that they lived together in a state of adultery (felonious adultery because of the racial feature involved), as charged in the second alternative averment of the indictment. On the trial of this case there was no controversy relative to the fact that Charles Medicus, named in the indictment, was a white person. The material inquiry was, therefore, Did the said Medicus and this defendant live together in a state of adultery within the time covered by the indictment, and, was this defendant a negro or a descendent of a negro? the evidence being without dispute that Medicus was a married man.

The evidence adduced upon each of these propositions was in conflict and presented questions for the determination of the jury, and upon both of these questions there was ample testimony, if believed by the jury under the required rules, to sustain the verdict of the jury and the judgment pronounced thereon. The refusal of several special written charges requested by defendant and numerous rulings of the court upon the testimony, to which exceptions were reserved, are relied upon for a reversal of the judgment appealed from.

[3] One of the principal controversies upon this trial was whether or not this defendant was a negro woman, or the descendant of a negro. In this connection the court, over the objection of defendant, permitted the witness, Mrs. Charles Medicus, to testify that she knew the defendant Sarah Wilson, sometimes called Sarah Simmons, and sometimes called Shreveport Sarah, and that she is a negro woman. No motion was made to exclude the answer of the witness; but it is here insisted that the objection interposed to the question calling for this answer should have been sustained, and that it called for testimony which was invasive of the province of the jury and an opinion or conclusion of the witness. We do not so conclude, and are of the opinion that no error was committed by the court in this ruling, and in other rulings of similar import upon this line of inquiry. Jones v. State, 156 Ala. 175, 179, 47 South. 100, 102. In the Jones Case, Justice Denson, for the court, said:

"The state's witness testified that Ophelia Smith looked like a white woman—*was a white woman.*' The court committed no error in overruling the motion to exclude the expression 'looked like a white woman.' But, if it were error not to exclude the expression, it would be a harmless one, *because the positive evidence of the witness was that 'she was a white woman.'*" (Italics ours.)

See, also, Parker v. State, 118 Ala. 655, 23 South. 664; Metcalf v. State, 16 Ala. App. 389, 78 South. 305.

On cross-examination of the witness Mrs. Charles Medicus she testified, among other things, that the defendant lived in a negro house with negro people. And she also stated on cross-examination, "You can tell by her looks she is a negro." And in reply to question by defendant's counsel, "Q. Do you know whether or not her father or mother have any negro at all in them, of your own knowledge?" she answered: "Why certainly, by looking at her. I do not know who they are. I could not swear how that is, by looking at her, I know." She also testified on cross-examination: "I saw negro women in the house all the time, and she has been on the streets with negroes. On one occasion I saw her, and another woman, and two negro men come out of her house together." This witness gave other testimony of similar import on this question.

State witness William Earnest also testified that this defendant is a negro woman, and that she married a negro man by the name of Wilson, and that he had seen her with negro people, and further that "within the last week I saw negroes coming up in the courthouse with her. I saw her with a negro woman named Ruby; after they left the courtroom I saw them kiss, they kissed her good-bye downstairs. This woman here (defendant) kissed Ruby good-bye. Ruby was a negro mighty near black." On cross-examination by defendant's counsel this witness testified: "I have seen her in negro assignation houses." Cliff Adams, witness for the state, testified: "I know Sarah Wilson, alias Sarah Simmons, alias Shreveport Sarah. I am connected with the police department. I judge I have been knowing her ten years, by sight, and during that time I have seen her frequently." He was asked, "Is she a negro woman?" Defendant objected to the question as calling for the opinion of the witness, and excepted to action of the court in overruling the objection. Witness answered: "Yes, sir. I know she has negro associates. I know she associates with Skip Lewis, a negro woman. There is Skip with a gray coat on. Skip is a negro woman." On cross-examination defendant's counsel asked, "How much negro has Skip in her?" to which witness replied, "Skip Lewis is a full-blooded negro, best of my opinion." He was then asked, "What is a full-blooded negro?" and answered: "Supposed to be all negro. Q. What is that? A. No white parents, 100 per cent. negro." And in answer to the question, "Were her parents Africans, or Americans, or what," witness stated: "I could not say; I know she is a negro. Q. Do you know how much negro blood the defendant has in her, if any? A. I know she has a great part of it. Q. How much? A. She is a negro, I know that. Q. How do you

know she has a great amount of negro blood in her? A. By her color, and by hearing her say she was colored. Q. And that is the only way? A. By her color and associates." On redirect examination: "Q. And she told you she was colored? A. Yes, sir; she has been picked up by the police department many times, and she said she was a negro, and she was locked up with the colored women there."

[4] On redirect examination of this witness it will be noted that he was permitted, without objection or exception, to state that this defendant had been picked up by the police department many times, and that she was locked up with the colored women there. It is apparent that defendant's case should not have been burdened with this character of testimony, for on the trial of this case it was wholly immaterial and irrelevant that "she had been picked up by the police department many times, and that she was locked up with the colored women there," and naturally this testimony would tend to prejudice the jury against her; but it was received with the apparent consent of defendant as no ruling of the lower court was invoked.

[5] This court is without authority to put the lower court to error in the absence of an adverse ruling to appellant. McPherson v. State, 198 Ala. 5, 73 South. 387; Montgomery v. State, 204 Ala. 389, 85 South. 785. Moreover, the jurisdiction of this court is appellate, and its duties are revisory only. Under the statute the court can only consider questions apparent on the record, or reserved by bill of exceptions. Code 1907, § 6264. No objection having been made to the introduction of this testimony, or any ruling of the court thereon invoked, we are without authority, as stated, to give the appellant the benefit of the point.

[6] State witness J. H. Simmons testified: "I am bailiff here. I have known the defendant Shreveport Sarah for a few days. I have not been knowing her long. Q. Recently, did you have a talk with her as to whether she was white or colored? A. Yes, sir. Q. Before she said anything to you about it, did you, or anyone else there make any threats against her to make her say what she did say? A. No, sir. Q. Did you, or anyone else present, hold out any reward or inducement to her to get her to say what she did say? A. We did not. * * * What she said was just in a conversational way. She was talking to me, and I was talking to her. I asked her if she was really a colored woman, and she said she was. She said her father was a white man, and her mother a negro woman. She used the word negro." On cross-examination of this witness by defendant's counsel he testified: "She told me her mother was a negro. She did not tell me her mother was a Choctaw Indian. * * * I asked her if she

really was a colored woman, and she said she was."

[7, 8] On the examination of this witness by the state he was asked (after a sufficient predicate had already been laid for the introduction of the statement by accused), "What she said, she said freely and voluntarily?" The defendant promptly and properly objected to the question as calling for the conclusion of the witness. The objection should have been sustained, for it is not permissible to allow a witness to state in a shorthand way that a confession was freely and voluntarily made; for to do so would be to allow not only the statement of a condition, but the substitution of the witness' opinion for the judgment of the court. Whether or not a confession has been voluntarily made is a question which must be determined by the court. But here, the error in overruling the objection was cured by a failure of the witness to answer the question, therefore no injury resulted to defendant by this ruling. And where no injury results to defendant, even though the ruling complained of is erroneous, a reversal will not follow.

[9] We are clearly of the opinion, from the above-stated testimony and other testimony of similar import, the question as to whether or not this defendant was a negro, or a descendant of a negro, was for the jury, and not a question of law for the court as insisted by counsel for defendant. The defendant denied the fact that she was a negro, or the descendent of one within the inhibited degree, thus forming the issue of fact for the jury.

[10] We are not impressed with the implied insistence of counsel that it is necessary and incumbent upon the state to fully trace the antecedents of a defendant in order to establish the race of an accused. A rule of that kind, where the inquiry is material, might, and no doubt would, often defeat the ends of justice, because of the impossibility clearly apparent in making such proof. We think that, if for no other reason, the rule born of necessity should and does permit a witness, if he knows such to be the fact, to testify that a person is a negro, or is a white person, or that he is a man, or that she is a woman; for courts are not supposed to be ignorant of what everybody else is presumed to know, and in this jurisdiction certainly every person possessed of any degree of intelligence knows a negro, and also that the term negro, and colored person, are used interchangeably and mean the same thing. This state has a statute on this question which provides that the term "negro" includes mulatto. The term "mulatto" or "person of color," is a person of mixed blood, descended on the part of the father or mother from negro ancestors to the fifth generation, inclusive, though one ancestor of each gen-

eration may have been a white person. Code 1907, § 2, par. 5.

In the case of Linton v. State, supra, the Supreme Court said:

"There was no error in allowing the state to make profert of the person of John Blue to the jury, in order that they might determine * * * whether he was a negro, as charged in the indictment."

In Metcalf v. State, supra, this court held:

"The appellant was convicted of the offense [of miscegenation]. On the trial, she testified as a witness in her own behalf, 'and was in the presence of the court and jury, and this was sufficient to authorize the finding that she was of the negro race."

The evidence in this case, on this question, was in conflict, as above stated, and, like any other material inquiry where conflict exists, it became a question for the determination of the jury.

[11] It was competent for the state to prove the telephone conversations between the defendant and state witness Mrs. Charles Medicus. The admissibility of telephone conversations has been decided many times. Alabama Livery Co. v. Hairston, 17 Ala. App. 17, 81 South. 353, and cases cited. In the instant case the statements alleged to have been made by this defendant to Mrs. Medicus were incriminating in their nature. These conversations were admissible. The credibility and the weight to be attached thereto were for the jury. No error appears in the rulings of the court in this connection.

[12, 13] It is next insisted that the court erred in sustaining the objection by state to the question asked defendant by her own counsel on direct examination. "Q. Did your mother tell you how old she was when her mother died?" The objection to this question was properly sustained as it was wholly immaterial how old this defendant's mother was when her mother, died (defendant's maternal grandmother), and, moreover the question called for purely hearsay testimony as no evidence was adduced upon this trial, nor any attempt made to show that at the time of the trial the defendant's mother was dead. However correct defendant's counsel may be in the insistence that pedigree may be proven by hearsay evidence by showing declarations of deceased persons, or by persons beyond the jurisdiction of the court, this proposition has no applicability here for the reason, as stated, that nowhere during the trial of this case was there any testimony showing or tending to show that defendant's mother at the time of this trial was dead, or that she was not within the jurisdiction of the court.

[14, 15] There is a rule of evidence which allows the statement of a deceased parent in reference to a child's age to be received in evidence, though given by a third party, as tending to establish the age of the child, etc. Martin v. State, 17 Ala. App. 73, 81 South. 851; but before this rule can be invoked for this or any other purpose, the death of the parent in question must be first shown. This is elementary and needs no discussion. For like reasons the court properly, and without error, sustained the state's objection to the question propounded to defendant by her own counsel, to wit: "Did your mother tell you that her mother was a Choctaw Indian."

[16] Whether "defendant's counsel had cautioned her on the day before not to talk to anybody about this case" was immaterial to any issue involved upon the trial of this case, and the court without error declined to allow this to be proven by sustaining the state's objection to the question calling for this statement.

[17, 18] The defendant in this case testified as a witness in her own behalf, and was therefore subject to impeachment the same as any other witness might have been. To this end the state, after meeting the required rule, offered testimony of her general bad character. The defendant objected, unless the testimony was confined to her general reputation for truth and veracity. To sustain this position we are cited to the case of Henderson v. Hosfeldt, 124 Ala. 391, 27 South. 415. Upon examination of that case we find nothing whatever bearing on this proposition, nor is the case of Linton v. State, 88 Ala. 216, 7 South. 261, also cited, in point; as in the instant case there was no effort made by the state to prove the defendant's bad character for chastity. The examination of the state's witnesses was as to her general character, and evidence of general bad character is admissible to impeach a witness; it need not be limited to the question of truth and veracity; it may be extended to that, but not limited to it as here insisted. In other words, under our rule, bad general character as a generic proposition may be given in evidence to impeach a witness. The inquiry is not confined to character for truth and veracity. The exception reserved to the court's ruling in this connection is without merit. Ward v. State, 28 Ala. 53; DeKalb v. Smith, 47 Ala. 412; Holland v. Barnes, 53 Ala. 83, 25 Am. Rep. 595; Motes v. Bates, 80 Ala. 382; McInerny v. Irvin, 90 Ala. 275, 7 South. 841; Mitchell v. State, 94 Ala. 68, 73, 10 South. 518; Yarbrough v. State, 105 Ala. 43, 55, 16 South. 758; Byers v. State, 105 Ala. 31, 16 South. 716; Ross v. State, 139 Ala. 144, 36 South. 718; Mitchell v. State, 148 Ala. 618, 42 South. 1014; Prater v. State, 193 Ala. 40, 69 South. 539; Brown v. Moon, 196 Ala. 391, 72 South. 29; Parker v. Newman, 200 Ala. 103, 109, 75 South. 479; Johnson v. State, 203 Ala. 30, 81 South. 820; McGuire v. State, 2 Ala. App. 218, 57 South. 57; McGuire v. State, 3 Ala. App. 40, 58 South. 60; Roden v. State, 13 Ala. App. 105, 112, 69 South. 366;

Robbins v. State, 13 Ala. App. 167, 171, 69 South. 297; Walling v. State, 15 Ala. App. 275, 73 South. 216; Williams v. State, 16 Ala. App. 329, 77 South. 923; May v. State, 16 Ala. App. 541, 79 South. 677; Stone v. State, 208 Ala. 50, 93 South. 706.

[19] On cross-examination of state witness Cliff Adams the court sustained objections to the questions: "Q. You do not believe she was telling the truth, then, when she told you she was a negro?" and "Q. You said here a few minutes ago that she told you, at one time when you arrested her, that she was a negro?" In these rulings there was no error; the inquiry was a mere argument with the witness by defendant's counsel, and the court properly disallowed the effort upon the part of counsel to enter into an argument with the witness. The ruling was correct also for the reason that it was immaterial as to whether or not this witness did or did not believe the particular statement alleged to have been made to him by defendant. It was for the jury to determine, from the evidence, if she had made such statement.

[20, 21] As hereinabove stated, the evidence as to the material issues involved in this case was in sharp conflict; it follows therefore that the court was without authority to direct a verdict in favor of defendant, and the court committed no error in refusing written charges 1, 2, and 3 requested by defendant. These charges were affirmative instructions for defendant, in different phases. The rule is that the general charge should never be given when there is any evidence, however weak and inconclusive it may be, tending to make a case against the party who asks it.

[22] Charge 4 refused to defendant was held by a majority of the Supreme Court to be a correct charge and its refusal to be error in the case of Adams v. State, 175 Ala. 8, 57 South. 591. In that case, however, Justices McClellan and Somerville (dissenting) were of the opinion that the charge was properly refused on the theory that " a probability of innocence is the equivalent of a reasonable doubt of guilt," and that the jury had been instructed by the court that they could not convict the defendant, unless they were convinced of his guilt beyond a reasonable doubt. A great number of cases are cited in the majority opinion to sustain its position. The minority justices in their dissenting opinion also cite numerous decisions of the Supreme Court in this connection. This court is of the opinion that the minority justices were correct in their treatment or discussion of the charge in question. We could not, under the statute, Acts 1911 p. 100, § 10, so declare, however, except for the reasons hereinafter to be stated, that is, the action of the Supreme Court upon this charge in later decisions; for the statute, supra,

provides that the decisions of the Supreme Court shall govern the holdings and decisions of this court. We think the charge under discussion is subject to the further criticism that it was not predicated upon the evidence in the case. Under the charge as requested the jury would have been authorized to acquit the defendant if there was a probability of her innocence which might have been engendered by the personal knowledge of the jurors, or from mere rumors, or gossip, or newspaper reports, or from many causes other than from the evidence adduced upon the trial of this case. It is elementary of course that the findings of the jury in every case must be based upon the evidence of that particular case, and upon no other facts or premise.

There would, of course, be a marked difference in the giving of a charge of this character than in its refusal. If the trial court gave a charge like the one under discussion, that is, one not specially predicated upon the evidence, the special charge so given would, under the law, become a part of the charge of the court and must be taken and considered by the jury in connection with the oral charge as a part of the law in the case, and the oral charge in every instance should instruct the jury that their findings must be upon the evidence submitted to them for their consideration.

It has been definitely determined by the Supreme Court that the refusal of this charge is not error. In Davis v. State, 188 Ala. 59, 69, 66 South. 67, 71, the Supreme Court in dealing with this charge said:

The charge "was well refused because it did not predicate the probability of innocence which would require an acquittal as arising out of the evidence."

In Edwards v. State, 205 Ala. 160, 87 South. 179, the Supreme Court held the charge to be bad in not hypothesizing a probability of innocence founded upon the evidence in the case.

[23] Refused charges 11 and 14 were fairly and substantially covered by the oral charge of the court; their refusal therefore was not error. However these charges are subject to other criticism not necessary to state as the propositions of law attempted to be embodied therein were fully covered by the court's oral charge.

Refused charge 16 was covered fairly and substantially by given charge 9, and by the court's oral charge. Every question presented has been considered and discussed. No error of a prejudicial nature appears in any of the rulings of the court to which exception was reserved. The record proper is regular in all respects.

Let the judgment of conviction appealed from stand affirmed.

Affirmed.