(125 So. 690)

## WILLIAMS v. STATE.  (4 Div. 515.)

Court of Appeals of Alabama.   Jan. 14, 1930.

E. O. Baldwin, of Andalusia, for appellant.

Charlie C. McCall, Atty. Gen., for the State.

BRICKEN, P. J. Appellant, alleged to have been a negro, or a descendant of a negro, and one Louise Cassady, alleged to have been a white person, were jointly indicted for the offense of miscegenation, under section 5001 of the Code 1923, as amended by an act of the Legislature approved August 2, 1927 (Acts 1927, p. 219).

Upon arraignment a severance was granted, and this appellant was alone put upon trial.

Before entering upon the trial defendant interposed demurrers to the indictment upon the grounds: (1) "The indictment charges no offense. (2) The sex of the parties is not alleged. (3) It is not alleged that either Louise Cassady or J. D. Williams is a woman, and it is not alleged that either of them is a man. (4) It is not averred that the defendants intermarried with each other."

The indictment to which these demurrers were directed reads as follows, omitting the caption and conclusion: "The Grand Jury of said county charge that before the finding of this indictment that Louise Cassady, a white person, and J. D. Williams, alias Jesse Williams, alias Jesse Lundy, a negro or descendant of a negro, did intermarry or live in adultery or fornication with each other," etc.

■ The indictment is in code form and therefore sufficient. Code 1923, § 4527. Moreover, the constituent elements of the offense are clearly set forth in the indictment rendering the demurrers inapt. Code 1923, § 4529. This form of indictment has been approved by this court in the case of Wilson v. State, 20 Ala. App. 137, 101 So. 417.

■ Upon the trial the state insisted that the accused persons were racially within the inhibited terms of the statute; that is to say, that the woman, Louise Cassady, was a white person, and Jesse Williams, alias Lundy, was a negro, or a descendant of a negro, and that they intermarried with each other. In other words, the state relied solely for a conviction upon the statutory marriage of the parties, and there was no attempt to show, and no evidence offered, that a common-law marriage existed, or that they had "lived in adultery or fornication" with each other. In this connection the court, of its own motion, charged the jury as follows: "The State has offered evidence here tending to show that these parties intermarried. There is no evidence before you of their living together in fornication or adultery." The court also gave at the request of appellant charge numbered 11, as follows: "The court charges that if you believe the evidence in this case you cannot convict the defendant for living in adultery or fornication with Louise Cassady." In this the court was correct; hence the question of material importance is, Did the parties intermarry as insisted upon by the state?

On this point the state introduced in evidence, in connection with the testimony of state witness H. J. Brogden, probate judge, the record of a marriage license dated April 26, 1928, authorizing "any Minister of the Gospel, Judge of the Supreme or Circuit Court, or Chancellor of said State, Judge of Probate or any Justice of the Peace of said county," to celebrate the rites of matrimony between the parties defendant, naming them. Over the objection and exception of defendant the state was permitted to offer in evidence also a record of a purported certificate of marriage signed by one W. A. Woodham, Notary Public and ex officio justice of the peace, in which it was certified that the parties named were married by him, the said Woodham, as such notary public and ex officio justice of the peace, at Opp, Ala., on the 26th day of April, 1928.

We shall pretermit a discussion of the several insistences of appellant to the effect that the manner of offering this evidence was improper and therefore illegal, and not in compliance with the law as to rules of evidence in this state. We do this for the reason that the sole question of whether there was a marriage or not, under the issues, will be conclusive of this appeal.

It is insisted there was no marriage between these parties, for that W. A. Woodham, the purported officer, who undertook to perform the ceremony was not an officer, de jure, or de facto, and, being wholly without any authority to perform a marriage ceremony, his attempt to do so in this instance was abortive and of no legal effect.

Under the law in this state the marriage ceremony may be solemnized by any licensed minister of the gospel in regular communion with the Christian church or society of which he is a member; by a judge of the Supreme, appellate, or circuit courts within this state; or by a judge of probate, or any justice of the peace within his county. Also by the pastor of any religious society according to the rules ordained or custom established by such society. The statute also provides that the people called Mennonites, or Quakers, or any other Christian society having similar rules or regulations, may solemnize marriage according to their forms by consent of parties, published and declared before the congregation as-

sembled for public worship. Code 1923, § 8995 et seq.

As to notaries, ex officio justices of the peace, the law provides that the governor of the state may appoint one notary public for each election precinct in counties, and one for each ward in cities of over 5,000 inhabitants, who, in addition to the powers of notary, as defined by law, shall have and exercise the same jurisdiction, and the same powers, as justices of the peace, within the precinct or ward for which he is appointed. Code 1923, § 9251.

Notaries public, with powers of justices of the peace, are judicial officers, Harper v. State, 109 Ala. 66, 19 So. 901, and courts are authorized and required to take judicial notice of the various commissioned officers of the state, and to know the extent of their authority, and their respective term of office—when such terms commence, and when they expire. Cary v. State, 76 Ala. 78.

Under our construction of the statute (Code 1923, § 9251), the term of office of all notaries public and ex officio justices of the peace end and their commissions expire (unless sooner removed) automatically with that of the governor who appointed them. There is no provision that a notary public and ex officio justice of the peace shall hold such office until their successors are appointed and qualified. It has been specifically held by the Supreme Court in the case of Cary v. State, 76 Ala. 78 "that such a statutory provision excludes by obvious implication, a construction which would permit them to hold office for a single day after the expiration of their commissions."

We therefore, judicially know that the W. A. Woodham named was appointed a notary public and ex officio justice of the peace, on June 14, 1924, and that his term of office, as such, expired on the first Monday after the second Tuesday in January, 1927. Woodham was not, therefore, an officer de jure on the 26th day of April, 1928, when he assumed to do the official act here complained of; and, unless he was an officer de facto, his attempted solemnization of the rites of matrimony between appellant and the woman named, was of no legal validity, the purported ceremony was abortive and of no effect, and no prosecution could be sustained.

Was the said Woodham, however, a de facto officer in contemplation of law, at the time in question, which was some 15 months after the expiration of his term of office. The answer to this question involves, not only a question of law, but also one of fact, and for this reason it seems has to be determined in every case. The general rules which govern are set forth in Cary v. State, supra. To constitute him a de facto officer he must either have acted under color of appointment and claim of official right (which it affirmatively appears he did not), or he must have continued to exercise the duties of his office, by public acquiescence, for such a length of time and by such frequency of repetition as to afford reasonable presumption of his holding over under reappointment. His commission having expired, as stated, some 15 months prior, without any right in law to hold over, it could not, in our judgment, lend color for any length of time beyond its expiration.

Applying these rules to the facts contained in this record, it is clear to our minds that Woodham was neither a de jure officer nor an officer de facto within contemplation of law. This is conclusive of the appeal and necessitates a reversal of the judgment of conviction from which this appeal was taken. Other questions need not be discussed.

Reversed and remanded.