# Barnett *v*. The State.

## *Indictment for Rape.*

1. *Complaint by prosecutrix.*—In a prosecution for rape, it is permissible for the State to prove by the prosecutrix, in the first instance, the fact that she made complaint of the injury, and when and to whom, and to corroborate her testimony as to this by the person to whom the complaint was made; and where there is an attempt to impeach her testimony on cross-examination, or a part of the details of the complaint is brought out on cross-examination of the person to whom it was made, the State is entitled to bring out all the particulars on re-examination of either of them.

2. *Charge as to proof of good character.*—In criminal cases, evidence of the defendant's good character is admissible to generate a doubt of his guilt, and the court may so instruct the jury; but a charge requested, which asserts that such evidence "will be sufficient to generate a reasonable doubt of his guilt," invades the province of the jury, and is properly refused.

3. *Charge on part of evidence.*—A charge which selects a part of the evidence, and instructs the jury as to the inference they may draw from it, omitting other parts bearing on the same questions, is properly refused, being argumentative and misleading.

4. *Charge as to inference or weight of evidence.*—It is the exclusive province of the jury to decide on the weight of the evidence, or the inferences to be drawn from it; and a charge which infringes on this prerogative, as by instructing them that certain facts "will justify a strong inference that his testimony is false," is properly refused.

[Barnett v. The State.]

5. *Conviction on uncorroborated testimony of prosecutrix.*—In a prosecution for rape, there is no rule of law which forbids a conviction on the uncorroborated testimony of the prosecutrix, although she may be a woman of ill-fame; and her refusal to submit to an examination of her person, while it may justify an argument to the jury, does not discredit her as matter of law.

6. *Service of copy of indictment, and of venire.*—When the defendant, being in actual confinement, is entited to a copy of the indictment and of the venire for his trial (Code, § 4872), it is not necessary that a copy of each should be served at the same time; and if service at different terms be irregular, the irregularity is waived unless objection be taken before entering on the trial.

FROM the City Court of Montgomery.

Tried before the Hon. THOS. M. ARRINGTON.

The indictment in this case charged that the defendant, Will Barnett, a negro man, forcibly ravished Lydia Bryant, a white girl. The defendant pleaded not guilty, and was tried on issue joined on that plea; being convicted by the jury, and sentenced to the penitentiary for life. On the trial, as appears from the bill of exceptions, the prosecutrix was examined as a witness for the State, and testified, in substance, that she was stopped one morning, while passing through a pasture more than a half mile from the house, by a negro man, who asked to have intercourse with her; that she refused, and ran from him, but was pursued and overtaken, " and, after they had scuffled until she was exhausted, he accomplished his purpose, and had sexual connection with her." On cross-examination she stated, that she ran away as soon as she got loose from the man, and overtook one Alfred Norman, who was out hunting and had a gun in his hand, " and told him to look at the place where they had the scuffle, and made complaint to him (about ten minutes after she was forced), and described the negro man to him as a short, chunky man, with a flat nose and lips that stuck out, who looked like Scott Barnes;" that she did not see the defendant, after the alleged rape, until he was being carried to the office of Squire Gardner after arrest, when he was pointed out to her, and she identified him, but did not before know him. She denied that she had ever told Rafe Adams, Wesley Hutto, or Gus Montgomery's family, "that the man did not get her clothes higher than her knees; nor had she ever told any one "that it was not Will Barnett—that she knew him—but it was a man who called himself Charlie, and who lived near the railroad;" and she admitted that she had had a bastard child. Alfred Norman, being then examined as a witness for the State, testified that the prosecutrix, when

[Barnett v. The State.]

she overtook him, "said that a negro had run after her, and he inferred from what she said that she had been ravished, though she did not say so." The prosecuting attorney then asked him to state "what the prosecutrix said to him in that complaint;" and the court allowed the question, against the objection and exception of the defendant. The witness answered: "She asked him to try and catch the negro, and showed him some scratches on the ground, where she said they had the scuffle; said the negro ran after her, and she screamed; and described the negro, and said he looked like Scott Barnes, and that he threatened to kill her." The defendant moved "to exclude the answer from the jury," and excepted to the overruling of the motion. Rafe Adams and Wesley Hutto, witnesses for the defense, testified that the prosecutrix told them, the day after the commission of the alleged rape, "that the man did not get her dress higher than her knees;" and the other persons above named testified that she told them "it was not Will Barnett—that she knew Will, and it was not he—that it was a man who said his name was Charlie, whom she had often seen coming from the direction of the railroad." There was, also, evidence as to the good character of the defendant, and evidence tending to show that the prosecutrix was a woman of ill-fame.

This being "all the testimony," the defendant requested the following charges in writing, each of which was refused by the court, and exceptions duly reserved to their refusal.

"(4.) When the good character of the defendant has been proved, this will be sufficient to generate a reasonable doubt of his guilt, even when such doubt would not otherwise exist."

"(5.) If the jury believe from the evidence, that the prosecutrix has associated and been intimate with negroes; or that she left her trunk for a long time at Josh Pomeroy's house, and changed her clothes there; or that she frequently got tobacco from him, or frequently visited at Lucy Montgomery's house, and borrowed her dress, and ate there; these are circumstances from which the jury may infer and presume that she would and did consent to having carnal intercourse with a negro."

"(6.) If the prosecutrix be of ill-fame, and stand unsupported by the testimony of others, this will justify a strong inference that her testimony is false."

"(7.) The jury are advised that, in this case, they should not sustain the prosecution, unless the evidence of the prose-

[Barnett v. The State.]

cutrix is corroborated by the evidence of experienced persons, medical or otherwise, who were called in to examine her person, as soon after the occurrence as circumstances allowed; and her refusal to be examined by a physician subjects her evidence to discredit."

"(9.)   The facts, if proven, that the clothes of the prosecutrix were not soiled, and that she was not hurt, are circumstances from which the jury can infer that her consent was given."

At the March term, 1887, a day was set for the trial of the defendant, and an order made for the service on him of a copy of the indictment, and also of the special *venire* summoned for his trial; but the cause was afterwards continued. At the next term, a day being again set for his trial, and a special *venire* ordered and summoned, a copy thereof was ordered to be served on him, and was served.   After conviction, he moved in arrest of judgment, because a copy of the indictment was not served at the same time with the copy of the *venire*; but, it being admitted that a copy of the indictment had been served at the former term, under the order then made, the court overruled the motion.

A. P. AGEE, for the appellant, argued all the points reserved by the record, and cited the following authorities: 1 Greenl. Ev., § 102; *Lacy v. State*, 45 Ala. 80; *Leoni v. State*, 44 Ala. 100; *People v. Graham*, 21 Cal. 21; *State v. Ivins*, 36 N. J. Law, 233; *State v. Jones*, 61 Mo. 232; *People v. Hulse*, 3 Hill, 309; *State v. Hagerman*, 47 Iowa, 151; Wharton's Med. Jur., §§ 466–68; *Spicer v. State*, 69 Ala. 159; *Sylvester v. State*, 71 Ala. 17; *Nutt v. State*, 63 Ala. 181.

THOS. N. McCLELLAN, Attorney-General, *contra,* cited *Griffin v. State*, 76 Ala. 29.

SOMERVILLE, J.—1. In prosecutions for rape, it is not denied, and in fact may be said to be universally conceded, that the State may, on the direct examination of the prosecutrix, prove the bare fact that she made complaint of the injury, and when and to whom, and she may be corroborated by the person to whom she complained as to the same fact.   As to whether the details, or particular facts of the complaint, can be proved, there is some conflict of authority among the decisions outside of this State; some of the most respectable courts holding, that such evidence is admissible

[Barnett v. The State.]

to show the nature of the complaint, and the probability of its truth.—*Benstine v. State* (2 Lea, 169); s. c., 31 Amer. Rep. 593; *Woods v. People* (55 N. Y. 515); s. c., 14 Amer. Rep. 309; *State v. Kinney* (44 Conn. 153); s. c., 26 Amer. Rep. 436.

The rule in this State, however, following what is believed to be the weight of authority both in England and America, is settled the other way. When the complaint does not constitute a part of the *res gestæ*, but is received only in corroboration of the prosecutrix's testimony, the general rule is, that the details or particulars can not be introduced, in the first instance, by the State. This would exclude any statement made in the complaint pointing out the identity of the person accused, or explaining the injuries claimed to have been received during the alleged perpetration of the crime, or otherwise giving the minute circumstances of the event. *Griffin v. State*, 76 Ala. 29, and cases there cited; *Hornbeck v. State* (35 Ohio St. 277); s. c., 35 Amer. Rep. 608; *People v. Mayes*, (66 Cal. 597); s. c., 56 Amer. Rep. 126; *Oleson v. State* (11 Neb. 276); s. c., 38 Amer. Rep. 266; 1 Whart. Cr. Law (9th Ed.), § 566.

But there are two cases at least where, under the authorities, the details of such complaint may be proved: (1.) They may be elicited, on cross-examination, by the defendant; and where this is done only in part, the State may then proceed to prove, on the rebutting examination, the whole complaint. (2.) Where the testimony of the prosecutrix is sought to be impeached, by attempting to discredit her story, it is permissible, by way of corroboration, for the State to prove such details, and, according to many of the authorities, also to prove that she told the story the same way to others, confirmatory of her first statement.—*Griffin v. State*, 76 Ala. 29; 3 Greenl. Ev., § 213; *Pleasant v. State*, 15 Ark. 624; *State v. DeWolf*, 8 Conn. 93; *State v. Laxton*, 78 N. C. 564; 1 Whart. Cr. Law (9th Ed.), § 566, note 2, p. 525.

Under these rules, it was permissible for the State to prove, by the witness Alfred Norman, the full particulars of the complaint made to him by the prosecutrix. Her testimony had been impeached by the defendant, and his counsel had also disclosed, on cross-examination, a part of the details of her complaint made to this same witness. The State was entitled to bring out the whole conversation, either by Norman or the prosecutrix; and this was permissible on the further principle of corroboration, as above stated.

[Barnett v. The State.]

2. If the fourth charge requested by the defendant had gone no further than to assert that evidence of a defendant's good character was admissible, not only where a doubt exists on the other proof, but to generate a doubt of his guilt in the minds of the jury, its refusal would have been error. *Williams v. State*, 52 Ala. 411. The charge went further, however, by deciding on the sufficiency of such evidence; and for this reason was properly refused, as an invasion of the province of the jury.

3. The fifth and ninth charges selected parts of the evidence, disconnected from other parts bearing on the same questions, and instructed the jury as to the inference which they would justify. Such charges have often been held to be erroneous, to say nothing of their mere argumentative character, and should always be refused.—*Finch v. State*, 81 Ala. 41; *Hancock v. Kelly, Ib.* 368; *Jordan v. State, Ib.* 20; *McPherson v. Foust, Ib.* 295.

4. The sixth instruction infringed upon the prerogative of the jury, by asking the court to charge on the weight of the evidence. It is for the jury, not the court, to say whether the inference to be drawn from the evidence is strong or weak.—*Shealy v. Edwards*, 75 Ala. 411, 419.

5. In prosecutions for rape, it is very proper for the jury to be exceedingly cautious how they convict a defendant on the uncorroborated testimony of the prosecutrix, especially when there is evidence tending to impeach her credibility; for the experience of the courts in modern times has amply attested the assertion of Lord Hale, that the charge of rape is "an accusation easy to make, and hard to be proved, and harder still to be defended by the party accused, though never so innocent."—1 Hale, 635. But there is no rule of law which forbids a jury to convict one charged with this crime, on the uncorroborated testimony of the prosecutrix, although she be impeached for ill-fame in chastity, or otherwise; provided they be satisfied, beyond a reasonable doubt, of the truth of her testimony.—*Boddie v. State*, 52 Ala. 395; 2 Bish. Cr. Proc. (3d Ed.), 968. If this were not so, one of the most detestable and atrocious of all crimes known to the law might often go unpunished, as the perpetrators of this offense almost invariably seek to carry out their purpose when their victim is alone and unprotected. It is manifest, under this principle, that the seventh charge was properly refused, which advised the jury not to convict unless the testimony of the prosecutrix was corroborated by an exam-

ination of her person by medical, or other experts, and that her refusal to submit to such examination would subject her evidence to discredit. However forcible such a suggestion may be, under some circumstances, as an argument to a jury, the law does not require it.—1 Whart. Cr. Law (9th Ed.), § 565.

6. The record shows that copies of both the *venire* and of the indictment were each served on the defendant, as required by the statute. It was no objection that the copy of the indictment was served at one term of the court, and that of the list of jurors contained in the *venire* at another term. No objection to this procedure, moreover, was taken in the court below, before entering upon the trial; and this operated as a waiver of the alleged irregularity, if such it could be called. It could no more be raised on motion for arrest of judgment, than it could on appeal for the first time.—*Lewis v. State*, 51 Ala. 1; *Miller v. State*, 45 Ala. 24; *Evans v. State*, 62 Ala. 6; Code, 1886, (2 Vol.), § 4449, cases cited in note.

We discover no error in the record, and the judgment must be affirmed.

