139 So.2d 302

Edward Sharpe BOSARGE

v.

STATE of Alabama.

I Div. 903.

Supreme Court of Alabama.

Sept. 28, 1961.

Rehearing Denied April 5, 1962.

330

Edmund R. Cannon, Jr., and Alton R. Brown, Jr., Mobile, for appellant.

MacDonald Gallion, Atty. Gen., and Robt. M. Hill, Jr., Asst. Atty. Gen., for the State.

GOODWYN, Justice.

Appellant, Edward Sharpe Bosarge, was convicted in the Mobile County circuit court of murder in the first degree and sentenced to death by electrocution. The indictment charged that he, "unlawfully and with malice aforethought, killed Dorothy Grace Cash by striking her with a hammer, against the peace and dignity of the State of Alabama." He entered pleas of "not guilty" and "not guilty by reason of insanity." His appeal here is under the provisions of the automatic appeal statute. Act No. 249, appvd. June 24, 1943, Gen.Acts 1943, p. 217. See 1955 Cum.Pocket Part, Code 1940, Tit. 15, § 382(1) et seq.

■ Being mindful of our duty in cases of this kind, we have carefully considered all of the testimony, even though no lawful objection or exception was made thereto, and find none seriously prejudicial to the rights of appellant; nor can we say, after considering all of the testimony, that the verdict is so decidedly contrary to the great weight of the evidence as to be wrong and unjust. Act No. 249, supra. The verdict is amply supported by the evidence. In fact, appellant voluntarily testified in his own behalf and admitted killing the deceased with a hammer after she refused his sexual advances and slapped him; that he lost his senses, did not realize what he was doing, and did not intend to kill her. Under the evidence, the issues as to appellant's guilt and competency were clearly for the jury's determination. The trial court fully expounded the applicable law in its oral charge to the jury, to which no exceptions were taken.

Two members of the Mobile County Bar were appointed by the trial court to defend appellant. The same attorneys appear in his behalf on this appeal. Although, in appellant's brief, reversible errors are charged and argued, we find no merit in any of them. Nor do we find any other ground for reversal. However, the several grounds relied on by appellant merit discussion.

### (1)

Error is charged in the denial of appellant's motion for a continuance and for a new venire, because of the alleged prejudicial nature of a newspaper article appearing in the April 24, 1960 Sunday edition of The Mobile Press Register. This article recited that the case was set for trial the following Wednesday; that appellant "had been paroled in August from Mississippi's Parchman Prison, where he served 14 years for manslaughter in a prior hammer slaying in Ocean Springs, Miss."; that "in that case, he was convicted of the bludgeoning of a young woman whose body was found in a hotel in the Mississippi Coast Town"; that "while at prison, an additional eight years was added to the 20-year term for a hammer attack on a prison official's wife." Also included in the article was a list of the veniremen summoned for duty as jurors during the week the case was set for trial.

The motion was based on the premise that, because of the article, appellant could not receive a fair and impartial trial at the time set for the reason that "the printing of the names of the jurors in the same article in which there appeared an account of the prior convictions of defendant unduly calls to the attention of the very jurors that are to hear the case the fact of such prior convictions, and has the further effect of singling out and giving undue emphasis of such prior convictions to such jurors."

Appellant offered only the newspaper article in support of his motion. However, the trial court, in qualifying the jurors, asked whether any of them had read the newspaper article. Fourteen answered in the affirmative. The court then directed to them the following inquiry:

"By the reading of the accompanying article, and if selected as a juror to try this case, would what you may have read influence you in any manner whatsoever if selected as a juror to

try this case? What the Court is trying to get over is this,—would you if selected as a juror to try this case try the case solely and only on the evidence presented in the case and the charge of the Court in connection therewith? * * *"

Each separately answered, in effect, that the article would have no influence on him and that, if selected as a juror, he would consider only the evidence presented.

■ There is an established principle that the matter of continuance in a criminal case is addressed to the sound discretion of the trial court, and that the exercise of such discretion will not be disturbed unless clearly abused. Goldin v. State, 271 Ala. 678, 680, 127 So.2d 375; Aaron v. State, 271 Ala. 70, 75, 122 So.2d 360; Cook v. State, 269 Ala. 646, 655, 115 So.2d 101; Walker v. State, 265 Ala. 233, 235–236, 90 So.2d 221; Logan v. State, 251 Ala. 441, 443, 37 So.2d 753; Riley v. State, 209 Ala. 505, 509, 96 So. 599.

In Goldin v. State, supra [271 Ala. 678, 127 So.2d 377], it is said:

"* * * It is the duty of the court to ascertain whether the defendant can reasonably be expected to obtain a fair and impartial trial by an unbiased jury. The burden is upon the defendant to prove to the reasonable satisfaction of the court that an impartial trial and unbiased verdict cannot be reasonably expected. Riley v. State, 209 Ala. 505, 96 So. 599."

■ The trial court was not convinced, nor are we, that appellant could not have had a fair trial because the newspaper article was read by some of the veniremen summoned for service as jurors in this case. It is our view that appellant has failed to show such an abuse of discretion as would warrant reversal for not· continuing the case. Also, it is our view that even if there was error in refusing a continuance, such error was cured when de-

fendant voluntarily took the stand as a witness in his own behalf and testified as to his prior convictions.

(2)

■ It is insisted that reversible error was committed in refusing to give appellant's requested written charge No. 31, viz.:

"31. I charge you gentlemen of the jury that if the defendant did not intend to kill Dorothy Cash, then you cannot convict him of murder in the first or second degree."

This charge was approved in Davis v. State, 214 Ala. 273, 276, 107 So. 737. However, if appropriate in the case before us, it was not error to refuse it because the same principle was substantially covered by the court's oral charge. Code 1940, Tit. 7, § 273; Morris v. State, 268 Ala. 60, 67, 104 So.2d 810; Walker v. State, 265 Ala. 233, 236, 90 So.2d 221, supra. Also, the charge concludes to an acquittal without hypothesizing that result upon due consideration by the jury of all the evidence on the issue of guilt vel non. Even if otherwise correct, it was properly refused on that ground. Lee v. State, 265 Ala. 623, 629–630, 93 So.2d 757; Coats v. State, 253 Ala. 290, 296, 45 So.2d 35; Campbell v. State, 182 Ala. 18, 33, 62 So. 57.

(3)

■ Insistence is made that a proper predicate was not laid before admitting evidence of an oral confession made by appellant.

Chief Deputy Blake testified as follows:
"Q. And you then immediately began talking to him about this case did you? A. I did.

"Q. You and Deputy Dees? A. Yes sir.

"Q. Just the two of you? A. There was others there, but there

was only the two officers in the room with us.

"Q. That's just the two with him? A. That's right.

\* \* \* \* \* \*

"Q. Before he made that statement, Mr. Blake, did you or Deputy Dees threaten him in any way? A. No way, shape, or form.

"Q. Did you offer him any reward to get him to say anything about the case? A. None whatsoever.

"Q. Did you offer him any inducement, or hold out any inducement to him to try to get him to—A. No sir.

"Q.—get him to make any statement? A. No sir.

"Q. Now, I'm going to ask the question in the nature of a confession,—what did he say?

"Mr. Cannon: I would like to object, Your Honor, on the grounds that a proper predicate has not been laid \* \* \*.

"The Court: I overrule your objections \* \* \*

"Mr. Cannon: We except."

Deputy Dees did not testify.

Appellant argues, first, that Deputy Blake's testimony shows that someone other than he and Deputy Dees was in the room when the oral confession was made; that there was no proof that someone other than the witness and Deputy Dees did not make some threat or hold out some inducement to appellant to make the confession. Evidently, the trial court concluded from Deputy Blake's testimony, and we think properly so, that only Blake and Dees were in the room with appellant. Secondly, it is argued that the testimony of Deputy Blake does not show that Deputy Dees, who was in the room with appellant, did not offer appellant a reward or inducement to make the confession. We are unable to agree with this insistence. It is to be noted that the question was first asked of Deputy Blake whether he or Deputy Dees threatened appellant in any way. Although the following questions did not continue to refer specifically to both Deputy Blake and Deputy Dees, the clear import of the other questions asked was that they applied to both of them.

It is to be noted, too, that appellant, on his direct examination, testified that only Blake and Dees talked to him on the occasion when he made the oral statement. Of some significance, also, is the fact that there is no indication whatever in appellant's testimony that he made the statement other than freely and voluntarily.

(4)

As already noted, appellant was a witness in his own behalf. The following is from his direct examination, viz.:

"Q. Mr. Bosarge, I believe you have been in trouble before with a hammer killing, is that correct? A. That's right.

"Q. Where did that occur? A. In Mississippi.

"Q. When did that occur? A. 1945, I think.

"Q. And as a result of that killing were you charged with any offense in Mississippi, did they charge you with anything? A. Yes sir, they charged me with murder.

"Q. What did they convict you of, if you know? A. Manslaughter.

"Q. What sentence, if any, did they give you? A. 20 years.

"Q. Did you go to the penitentiary for that? A. Yes sir.

"Q. For what period of time were you in the penitentiary? A. 14 years, I believe.

"Q. While you were in prison, that was at Parchman, Mississippi? A. Parchman, Mississippi.

"Q. While you were there were you charged with any other offense for the use of a hammer? A. I got into it with a man's wife.

"Q. You did at the prison? A. Yes sir.

"Q. Now as a result of that were you charged with any offense? A. Assault and battery.

"Q. Were you convicted? A. They give me 7 years, and 1 year for escaping.

"Q. They charged you with assault and battery and give you 7 years, and then you were in Parchman at the time, is that correct? A. That's correct.

"Q. And you stayed at Parchman? A. Yes sir.

"Q. How long did you stay in Parchman for both of these offenses? A. 14 years.

"Q. How did you happen to get out of Parchman, did they parole you? A. They paroled me."

On his cross-examination the following occurred, viz.:

"Q. You knew you were on parole at the time this happened, didn't you? A. I was on parole from Parchman.

"Q. You were on parole, weren't you? A. From Parchman.

"Q. And you were on parole for what? A. Manslaughter charge.

"Q. You were first charged with murder over there in Mississippi, I believe you told your lawyers, weren't you? A. I don't know exactly how, —I believe I was, I don't know.

"Q. You believe you were,—you knew what you were charged with,— didn't you answer a while ago that 'I was charged with murder of a woman in Mississippi'? A. Murder or man-slaughter, either one.

"Q. You were charged with mur-der,—were you tried? A. Yes, they tried me and give me 20 years.

"Q. The jury tried you? A. Yes.

"Q. And the Jury decided to give you 20 years, you say—for what, man-slaughter? A. Manslaughter.

"Q. And that was in June of 1945, wasn't it? A. It was in June, I don't know the month [sic].

"Q. Now, how did you kill that woman? A. They said I killed her with a hammer.

"Q. They said,—well I'm asking you to tell this jury how you killed her,— not what they said,—did you use a hammer or a hatchet? A. It was a hammer used.

"Q. Where were you when you killed her, under what circumstances,— were you out with her on a date? A. Yes, we was on a date.

"Q. You were on a date,—did she refuse to have sexual relations with you? A. Yes.

"Q. You were on a date, how did you come to kill her if you had her out on a date, Mr. Bosarge?

"Mr. Cannon: We object to this particular line of questioning Your Honor, he can't go into the particulars of the offenses committed in Mississippi.

"The Court: I overrule that objection to this particular question Mr. Cannon.

"Mr. Cannon: We except.

"Q. So you then went to the penitentiary for that murder, and you say you got 20 years, and I believe you said in 1949 you had some more trouble while you were in the penitentiary,— in other words, about 4 years after you had been in Parchman you had some more trouble, huh? A. That's right.

"Q. Now you said you were charged with assault and battery,—as a matter of fact you were charged and convicted of assault and battery with intent to murder, weren't you? And got 7 years for it? A. All I know is they told me it was assault and battery.

"Q. Assault and battery with intent to kill, wasn't it? A. They didn't tell me nothing, they just told me assault and battery.

"Q. What did you do, was that a woman involved? A. A woman, yes.

"Q. That was in the penitentiary? A. Yes, that was in Parchman.

"Q. Did you use a hatchet or a hammer? A. I used a hammer.

"Q. Did you escape or not from the penitentiary? A. Yes, I escaped.

"Q. At the same time that you committed that crime? A. Yes.

"Q. And you got an additional one year for that, didn't you? A. Yes, that's right.

"Q. So in all you had 20, and 7 and 1,—you had 28 years in the Mississippi Penitentiary to serve, didn't you? A. That's right.

"Q. And you served half of it, 14 years? A. (No answer.)"

Appellant insists that reversible error was committed in so cross-examining him because of: (a) The emphasis on the sameness of the crimes; (b) the eliciting of details of the crimes; (c) the failure to prove the former convictions by court records; (d) failure of the trial court to instruct the jury how evidence of the former convictions should be considered; and (e) the admission of a diagram which was "not clear and understandable to the witnesses interrogated with reference to it." Our conclusion is that none of these grounds constitutes reversible error.

(a) and (b). In 98 C.J.S. Witnesses § 401 p. 186, the rule for cross-examining an accused is stated as follows:

"* * * In general, accused may be cross-examined as to any matters pertinent or material to the issues in the case, or any matter concerning which he has testified, or to which he has referred, on his direct examination, or any matter as to which he has volunteered a statement, or any matter which may throw light on the testimony given by him on direct examination, and which is germane thereto; and the cross-examination may be as searching and broad as the foundation of direct examination on which it rests."

■■ Since appellant had already testified on his direct examination with respect to the former convictions, we see no prejudicial error in permitting his cross-examination concerning such convictions. The cross-examination brought out nothing more of substance than had already been testified to by appellant. Indeed, the former convictions were injected into the case by appellant himself, thus opening the way to a cross-examination with respect thereto. Also, it is an established principle that the extent of cross-examination is a matter addressed to the sound discretion of the trial court, not reviewable except for abuse. Burgess v. State, 256 Ala. 5, 11, 53 So.2d 568; Davis v. State, 240 Ala. 365, 367, 199 So. 547; Pynes v. State, 207 Ala. 413, 415, 92 So. 666. Under the circumstances of this case we see no abuse of discretion in the cross-examination of appellant.

■ (c). Since appellant testified to his prior convictions on his direct examination there was no necessity for the State on cross-examination to prove such convictions by a certified copy of the records of the courts showing them, under the best evidence rule. As said in Harbin v. State, 210 Ala. 667, 668, 99 So. 100, 101:

"* * * The best evidence for establishing the fact of conviction for a

crime is by a certified copy of the record of the court showing it, except when the witness is the person convicted. * * *"

■ (d). Undoubtedly, appellant's convictions were brought out by him to support his plea of insanity. And the trial court, in its oral charge, fully dealt with that plea. Appellant must have been satisfied with the trial court's oral instructions to the jury because he took no exception thereto; nor did he request any written charge stating to what extent consideration should be given to the evidence of appellant's former convictions. We see no reversible error in the failure of the trial court, under the circumstances of this case, to specifically charge the jury as to what bearing appellant's former convictions should have on the case.

■ (e). The State offered in evidence a diagram consisting of streets and various objects and buildings marked thereon. This diagram was referred to by some of the witnesses in the course of their testimony. We find no error in admitting it into evidence. Hardie v. State, 260 Ala. 75, 79, 68 So.2d 35; Jones v. State, 181 Ala. 63, 77, 61 So. 434; Noel v. State, 161 Ala. 25, 31, 32, 49 So. 824; Burton v. State, 115 Ala. 1, 9, 22 So. 585.

As stated in Jones v. State, supra [181 Ala. 63, 61 So. 439]:

"The correctness of the diagram, as well as the accuracy of the testimony relative thereto, was a question for the jury, as was, also, the extent to which they were aided by said diagram."

In Burton v. State, supra [115 Ala. 1, 22 So. 588], it was said:

"How far the map or diagram was an accurate representation was matter for the consideration of the jury, as was the credibility of the draftsman in support of its accuracy, as was also the extent to which they were aided by it in understanding the testimony having

reference to the localities, distances, and all the various objects shown by it."

Finding no error to reverse, the judgment of conviction is due to be affirmed.

Affirmed.

All the Justices concur.