274 So.2d 630

Bobby Mack Arthur RHODEN, alias

v.

STATE.

6 Div. 320.

Court of Criminal Appeals of Alabama.

March 13, 1973.

Rogers, Howard, Redden & Mills and Robert M. Harper, Birmingham, for appellant.

William J. Baxley, Atty. Gen., and Albert D. Capouano, Sp. Asst. Atty. Gen., for the State.

**HARRIS, Judge.**

On February 5, 1971, appellant was indicted by the Grand Jury of Jefferson County for the offense of rape. He was duly arraigned on the 27th day of May, 1971, with a court-appointed lawyer. The case was originally set for trial on June 21, 1971, and passed to September 13, 1971. At arraignment, appellant interposed two pleas, (1) not guilty, and (2) not guilty by reason of insanity. On the date of trial the special plea of not guilty by reason of insanity was withdrawn. The jury rendered a verdict of guilty as charged in the indictment and fixed his punishment at imprisonment in the penitentiary for life. He is in this Court with a free transcript and the same lawyer that represented him in the court below.

Appellant is a Negro. The victim hereinafter referred to as the prosecutrix was a young white woman, eighteen years old at the time of the offense, and was employed as a telephone operator by South Central Bell Telephone Company.

According to the testimony of the prosecutrix, she got off work at eight o'clock p. m. on November 19, 1969, the date of the occurrence. She immediately tried to call her fiance, Claiborn Allen Traylor, but was unable to make connections as his telephone was busy. She tried several more times without success. She then left the Telephone Building and walked alone to her car, which was parked near the corner of Sixth Avenue and Seventeenth Street. She tried several times to crank the car but could not do so. She then started walking back to the Telephone Building. After walking a short distance, she was met by a colored man dressed in a trench coat wearing a hat that had an emblem on it and had a flashlight in his hand. This man asked her if she was having trouble with her car and she told him she could not crank it and he stated he would help her. They returned to the car and she again tried to get it started while this man had the hood up. He told her that something was wrong with the battery and he needed some jumper cables to get it started. He told her his brother lived nearby and he would see if he had jumper cables and to lock the car and go with him. They walked to a house close by and he entered the house leaving her on the porch. She waited three to five minutes and hollered through the screen door and asked him if there was a telephone she could use to call her fiance. He told her the telephone was just on the inside near the door.

She could not find the phone and saw him in the back hallway and again asked about the phone. He told her the phone was in the back and for her to come to the back of the house. When she got to the back, she observed a bed in a room and started to leave when he grabbed her by the arm and around her shoulders and pulled her into the bedroom where he tore her underclothes off and then her dress. She started screaming and crying and he put his hand over her mouth and told her if she did not be quiet he would hurt her. He then raped her. She testified he entered her three or four times; that the first two attempts were unsuccessful as she was a virgin. He ejaculated her and told her if she told anyone he would kill her. She went to the bathroom and found she was bleeding. While she was in the restroom, he went through her pocketbook and saw her telephone pass card with her picture, age, weight, and address. She was five feet two inches and weighed ninety-five (95) pounds. She testified that she thought she would never get out of this house alive and thought it best to gain his confidence whereupon she told him if he would let her go she would meet him at the same place the following Saturday. He gave her a piece of paper and told her to write her name and telephone number. She wrote her name and gave a false telephone number. He told her he knew her and saw her when she parked her car that morning and *that he had done something to her car to prevent it from starting.* She testified that her assailant kept her in that room about an hour but she was not too certain as to the length of time. In the Rape of Lucrece, the Bard wrote "Short time seems long in sorrow's sharp sustaining" and could be the same here. She left the house and returned to the Telephone Building where she met her roommate—Charlotte Brock—who got off work at ten thirty and was waiting for a cab. Prosecutrix was still crying and told Charlotte what had happened and requested her to call her fiance. She finally got the call through and Traylor said he would come

immediately. Charlotte carried prosecutrix to the ladies lounge to wipe her face and try and compose her. While in the lounge, the prosecutrix went to the restroom and in a few minutes she screamed. Charlotte went in and observed blood all over her underclothes. When her fiance arrived, she and Charlotte got in his car and she told him what had occurred. He immediately drove them to Police Headquarters to report the rape.

The next morning, November 20, 1969, at 7:48, prosecutrix was given a vaginal examination by Dr. John Hillhouse and he found quite a bit of bright red blood in the vaginal canal and "the hymen appeared to be recently ruptured and there was a bruise on the outer vaginal wall". Smears were taken and they showed male sperm present.

While at Police Headquarters, a detective took photographs of prosecutrix's dress and panty hose. These were received in evidence without objections. After the photographs were made, prosecutrix accompanied the officer to the house where the occurrence took place, being 1605 Seventh Avenue, North. The assailant was not present and the bedroom was locked.

On the night of November 21, 1969, three detectives went to the address listed above to further investigate the alleged rape. They interviewed a woman by the name of Constance Dial, who had an apartment just across the hall from the room where prosecutrix was attacked. Appellant walked up in front of the house and identified himself as McArthur Rhodes and the officers immediately placed him under arrest for rape. They put him in the patrol car and carried him to the station house and gave him the *Miranda* warnings in full. The officers told him they were investigating an alleged rape of a girl who worked at the Telephone Company and had gotten off work and gone to her car and could not start it and a colored man came up and offered to help her start

it and that after he tried to help her get the car started and could not that the man carried her to this house and raped her. Appellant told the officers that he did not know anything about it, did not know anything about the car, and did not know what the officers were talking about. In searching appellant's pocketbook, the officer found the piece of paper on which the prosecutrix had written her name and a telephone number. When confronted with this piece of evidence, appellant changed his story and admitted that he had sexual relations with the girl. He claimed that this was accomplished not only with her consent but at her insistence.

At trial appellant denied that he had ever seen the piece of paper on which prosecutrix had written her name and listed a phone number even though the piece of paper was removed from his pocketbook by the detectives in his presence.

The state produced Constance Dial who testified that she knew appellant and that she had a room or apartment just across the hall from the bedroom occupied by Rhoden on the night of November 19, 1969. She further testified that on that night between eight thirty and nine o'clock, she heard a woman scream twice and heard a female crying.

We forego further details of this crime. The language used by appellant in describing the occurrence is repulsive in the extreme and would be best left unsaid.

Appellant urges a reversal because of the failure of the trial court to give two (2) requested instructions to the jury, and in the action of the court in overruling his objection to the prosecutor's closing argument wherein there was an appeal to racial prejudice. We will deal with the refused charges first. These charges are as follows:

> Charge No. 12: "I charge you that if any or all of the witnesses for the State have exhibited or admitted bias, prejudice, anger, or ill will against the Defendant, or from all the evidence in the case you find such bias, prejudice, anger, or ill will on the part of all or any of the State's witnesses, and if these things, when considered by you in connection with all the other evidence in the case, create in your minds a reasonable doubt of Defendant's guilt, you should acquit the Defendant."

> Charge No. 15: "If the jury believe from the evidence that the conduct of ———— ———— (Prosecutrix) was such toward the Defendant at the time of the alleged rape as to create in the mind of the Defendant the honest and reasonable belief that ———— ———— (Prosecutrix) had consented or was willing for Defendant to have connection with her they must acquit the Defendant."

■■ Appellant's requested Charge No. 12, supra, is a correct statement of the law. The failure to give such a charge in a proper case is reversible error. Roden v. State, 13 Ala.App. 105, 69 So. 366. However, we have carefully examined the record and nowhere do we find that any witness for the state exhibited or admitted bias, prejudice, anger or ill will toward appellant, though it would have been most natural for the prosecutrix to have done so. The record fails to support the statement of appellant's astute counsel that "the hostility demonstrated toward defendant by the prosecutrix, and other witnesses testifying on behalf of the state, required that the jury be instructed in accordance with requested charge no. 12." From a silent record it is impermissible for us to reach such a conclusion. We hold the charge was abstract and properly refused.

■■ Refused Charge No. 15 asserts a correct proposition of law. McQuirk v. State, 84 Ala. 435, 4 So. 775; Allen v. State, 87 Ala. 107, 6 So. 370. The principle enunciated in this refused charge was

substantially covered in the court's oral charge to the jury.

The trial court was most thorough in the oral charge as to the elements of rape:

"Now rape consists of the following elements. One, there must be carnal knowledge of a woman, that is illegal carnal knowledge of a woman.

Second, this carnal knowledge must be without her consent and against her will and, third, it must be by force and violence or by intimidation and duress. Those are the elements of the crime of rape."

Threaded throughout the oral charge the trial court stated time and again that if the carnal knowledge or intercourse was accomplished by force, actual or constructive, the man would be guilty of rape if it was done *without her consent and against her will.* The court further charged the jury:

"I would further charge you if you believe from the evidence that the defendant had intercourse with ——————————— (Prosecutrix) and if you further believe from the evidence that —————— —————— (Prosecutrix) consented to have intercourse with the defendant, then you could not convict."

The phrase "from the evidence", in such charges, is comprehensive and all embracing. It means every spoken word; every movement and conduct of the parties; every look, act and sign, which tends to produce conviction in the mind that consent is apparent, and willingness to engage in sexual intercourse is present, obvious, manifest and urgent.

When appellant was arrested for this offense he immediately told the officers that he did not know anything about it, did not know anything about the car, and did not know what the officers were talking about. In other words he was not guilty of rape because he simply was not guilty. Then when the officers found the piece of paper in his pocketbook with prosecutrix's name and a telephone number in *her own handwriting,* he realized that the physical evidence in his possession put him at the scene of the crime and thus he had best go with the defense of "consent". The two positions he took within the hour were wholly inconsistent though proper under a not guilty plea. Under all the circumstances we hold that refused charge no. 15 was fairly and substantially covered in the oral charge to the jury. Golden v. State, 39 Ala.App. 361, 103 So.2d 52; Garrett v. State, 268 Ala. 299, 105 So.2d 541; Bosarge v. State, 273 Ala. 329, 139 So.2d 302; Beavers v. Boykin, 273 Ala. 413, 142 So.2d 10; Kemp v. State, 278 Ala. 637, 179 So.2d 762.

This now brings us to a consideration of the third insistence of error—the argument of the state's prosecutor. The portion of the argument to which objection was made is,

"But if you do believe what she (prosecutrix) told you, then you have got to believe that he took it, he got him a white woman."

From the record:

"MR. HARPER: Now I object to that. It is prejudicial, it is inflammatory, it is improper argument.

"THE COURT: The Court will overrule the objection but the Court will caution the District Attorney that some of the statements and the insinuation may amount to prejudice.

"MR. HARPER: We except."

The record is replete with references to "white lady" and "white woman", and was made through the trial by counsel on both sides and many times during the testimony of appellant by the appellant himself.

■ The law guarantees to every defendant, white or black, a fair and impartial trial, free from undue appeals to prejudice or other improper motive, and this duty is emphasized when a colored man is

placed upon trial before a jury composed of white people. Tannehill v. State, 159 Ala. 51, 48 So. 662; Williams v. State, 25 Ala.App. 342, 146 So. 422; Harris v. State, 22 Ala.App. 121, 113 So. 318.

 It was undisputed that appellant was a Negro. He took the stand in his own behalf and was, therefore, before the jury. The whole courtroom knew a Negro was on trial for the rape of a white woman.

In Davis v. State, 233 Ala. 202, 172 So. 344, our Supreme Court said,

"It is not every reference to a defendant as a negro, when he is a negro, that would be improper, though the charge was for an attack on a white man. It should appear that it was so made as to emphasize the difference in races, and thereby to appeal to race prejudice.

\* \* \* \* \* \*

"The trial court knew all the side plays and surroundings not shown by the record, including the emphasis of expression and the manner exhibited in the references to defendant as a negro."

See Daniels v. State, 243 Ala. 675, 11 So.2d 756; Johnson v. State, 35 Ala.App. 645, 51 So.2d 901.

We do not think that the remarks made by the district attorney could be construed as an appeal to race prejudice. Appellant freely admitted that he had sexual relations with prosecutrix but only with her consent.

We have carefully examined the record for error affecting the substantial rights of appellant and have found none. This case is due to be affirmed.

Affirmed.

CATES, P. J., and ALMON and TYSON, JJ., concur.

DeCARLO, J., recuses himself.