328 So.2d 311

**Johnny Ray FISHER**

v.

**STATE.**

**8 Div. 721.**

Court of Criminal Appeals of Alabama.

Jan. 20, 1976.

Rehearing Denied Feb. 17, 1976.

William J. Baxley, Atty. Gen., and Gary R. Maxwell, Asst. Atty. Gen., for the State.

C. Wayne Morris, Huntsville, for appellant.

BOOKOUT, Judge.

Rape; sentence: ten years imprisonment.

The prosecutrix testified she returned home from work around 11:30 P.M. on

January 27, 1975. As she walked up on her porch, a person came up to her and asked if she had a telephone, and she answered, "no." The prosecutrix was attempting to unlock the door to her apartment and was trying to awaken her husband to let her in. She could not awaken him, and the appellant returned and grabbed her from behind, around the neck. She stated that she screamed and that she could not say anything. The appellant then "drug" her approximately a block and a half to a secluded spot. She testified that, "[h]e kept telling me that I was going to give him anything he wanted. Would I give him anything he wanted and I agreed with him because I was scared he would hurt me. And so, he told me to take my clothes off." She testified that he had sexual intercourse with her at that time.

After the ordeal, they returned to the front of her apartment building. The prosecutrix stated that appellant asked if she had any money and that she emptied all the contents of her purse on the sidewalk and gave him some pills and all of the money that she had. She told appellant that she did not have any more money, but would have some more the next day. The appellant then told her that he would come back the next morning.

As soon as the appellant left, the prosecutrix went to her husband and told him what had happened. Her husband got her mother, who then called the police. He then took the prosecutrix to the hospital for an examination.

The appellant came back to the apartment the next morning, but ran when he was confronted by the prosecutrix's husband. He later ran from the police, but was captured. He was positively identified by the prosecutrix immediately after his arrest and also during the trial.

Ronald Adams, a Huntsville police officer, testified for the State that he went to the home of the prosecutrix at 12:27 in the early morning hours of January 28, 1975. He testified that he was met at the front door by the husband and that once inside, he found the prosecutrix sitting in a chair, crying. After a conversation with her, he advised her husband to take her to the emergency room of the hospital for an examination.

The prosecutrix's husband testified that on the night in question, his wife came into their bedroom and stated that she had been raped and some money had been taken from her. He also testified that the next morning when the appellant came to the back door, he asked appellant, "[w]ere you the guy that messed with my wife last night?" He stated that the appellant ran, and he chased him for about two blocks.

The appellant, Johnny Ray Fisher, testified that he approached the prosecutrix on the front porch and inquired about the use of a telephone. He testified that he walked off two or three steps and then turned around and put his arm around her shoulder. She turned around and "hollered" slightly. After this, the prosecutrix asked him where he was going, and he then asked her if she would like to go for a walk, and she said that she would. The appellant testified that they walked around the apartment and that the prosecutrix asked him if he had ever had sex with a white lady. The appellant stated that they started hugging and kissing, and that she made advances concerning his sexual organ. He testified that he had no weapons in his possession at any time. He further stated that the prosecutrix started taking her clothes off and that he had not asked her for anything. He said she pulled him down on top of her. He admitted to having sexual intercourse with the prosecutrix, after which he said she asked if he needed any money. She had left her purse on the front porch when she went for a walk with him, and they went back to the front of the apartment for her to get her purse. She then emptied the purse on the sidewalk and offered him some pills and money.

The appellant stated that the prosecutrix asked him to come back at 7:00 or 7:30 A. M. She told him not to come to the apartment, however, if he saw a black and white car parked there.

Erssie Draper, the next door neighbor of the prosecutrix testified as to the incident on the night of the rape. She stated that the appellant "grabbed" the prosecutrix, and the prosecutrix screamed. She further stated that "[h]e had her around the neck and he carried her on around." The witness also observed them return to the front of the apartment and saw the prosecutrix empty her purse onto the driveway and give the appellant a bottle. She heard him say, "I will see you and don't forget." She then heard the prosecutrix say, "I won't." After this, the appellant walked away. She also testified that the prosecutrix, after the incident, came to the wrong window and "she pecked on my daughter's window."

The State put on a rebuttal witness, Emily Lofty, an employee of a Huntsville motel. Over objection, she told of being assaulted by the appellant five days prior to the instant case. The appellant was called in rebuttal and denied ever seeing the witness and stated that he did not attack her.

I

Counsel for appellant ably and vigorously asserted the rights of his client both in the trial court and here on appeal. Counsel contends that the trial court erred in refusing to allow the appellant to strike a jury from forty-eight veniremen.

Act No. 532, Acts of Alabama 1969, approved August 21, 1969 [Title 13, § 125 (90h) 1973 Cum.Supp., Code of Alabama, Recompiled 1958] provides that in the Twenty-third Judicial Circuit, a defendant, ". . . in capital felony cases shall be entitled to strike from a list of not less than forty-eight competent-jurors . . . ."

The appellant challenges the trial court's ruling that capital felonies are now to be considered non-capital felonies since *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). Appellant's challenge of the venire is based upon the recent ruling of the Alabama Supreme Court in *Ex parte Bynum, Jr.*, 294 Ala. 78, 312 So.2d 52 (1975). There the Court held that "capital offenses" still exist in Alabama stating, ". . . The only effect of *Furman* was to eliminate the imposition of the death penalty as it was then enforced, and not to eliminate the classification whereby crimes are categorized as capital for purposes other than punishment."

■ Contrary to the broad language employed by the Supreme Court in *Bynum*, we are of the opinion that the Court was addressing itself solely to the question of bail. The purpose for a special venire in "capital cases" was to give a defendant, on trial for his life, an additional safeguard not given to those where only their liberty was at stake. At the time Act No. 532, supra, and Title 30, § 63, Code of Alabama 1940, were enacted, the only distinction between "capital" and "non-capital" cases was the possible imposition of the death penalty. Since the imposition of the death penalty has been suspended, there is no rational justification for a special venire in a case formerly classified as "capital" where the maximum punishment is now the same as in a "non-capital" case.

Should the legislature ever enact a death penalty statute which meets all the constitutional tests for validity, then such special venire statutes would again become applicable, in our opinion. We do not believe the Alabama Supreme Court intended that its reasoning in the *Bynum* decision should be extended to require a special venire in cases where the death penalty cannot be imposed.

II

The appellant contends that the trial court committed reversible error in certain rulings concerning testimony given by Officer Ronald Adams.

Adams testified that the prosecutrix's husband met him at the door of the apartment, and the following occurred:

"A. Yes, sir. He stated that his wife had been raped by a colored fellow.

"MR. MORRIS: We object and move to strike any testimony not part of the res gestae.

"THE COURT: I sustain it. But let me point out that you heard the question and you sat there and had an opportunity to hear it without objection. So, the point I am making is, enter your objection timely.

"MR. MORRIS: I didn't understand all the answer he was giving or the question.

"THE COURT: You understood the question. Go ahead.

"MR. MORRIS: We accept to the Court's ruling.

"THE COURT: Anyway, I sustain the objection, but enter your—I sustain it, but enter it at the time, next time."

It is the contention of the appellant that the above statement identified the appellant. The appellant cites a number of cases to the effect that the State may prove that a complaint was made, but details of the occurrence, including the identity of the person accused, are not proper subjects of inquiry. *Hall v. State*, 248 Ala. 33, 26 So.2d 566 (1946).

■ Although the proposition of law is correctly stated by appellant, we do not find that the statement here objected to goes into the details of the occurrence or identifies the person accused. The husband's statement that, "his wife had been raped by a colored fellow," in no way identified Johnny Ray Fisher as the rapist. The term "colored fellow" is too broad to identify any particular person out of a group of thousands who could fit that de-

scription. The trial court sustained the appellant's objection, but made no ruling on the motion to "strike" the testimony. We find no prejudicial error on the part of the trial judge in sustaining appellant's objection, but failing to exclude the testimony from the jury.

Officer Adams further testified concerning his investigation, and the following occurred:

"A. She was sitting in a chair in the living room and she was crying.

"MR. MORRIS: Objection, Your Honor.

"THE COURT: Overruled.

"MR. MORRIS: Move it be stricken, not part of the res gesta and tending,— not tending to show the particulars of the complaint.

"THE COURT: Overruled.

"MR. MORRIS: Accept. (sic)

"Q. She was crying you say?

"A. Yes, sir.

"Q. What else, if anything?

"A. She was hysterical like.

"MR. MORRIS: Objection; calls for a conclusion of the witness and hearsay. Not part of the res gesta and move to exclude.

"THE COURT: I sustain it.

"MR. MORRIS: Move for a mistrial.

"THE COURT: I sustain it as to the conclusion. Overruled.

"MR. MORRIS: Move for a mistrial and—

"THE COURT: Overruled.

"MR. MORRIS: We accept. (sic)"

*Hall*, supra, holds that where the appellant admits the intercourse, but claims it to

be with consent, there is no prejudicial error in eliciting, in addition to the fact of the complaint, the details of the occurrence and identity of the person accused. Supreme Court Rule 45, appendix, Title 7, Code of Alabama 1940. Also see: *Etheridge v. State*, 47 Ala.App. 233, 252 So.2d 655 (1971).

*Cox v. State*, 280 Ala. 318, 193 So.2d 759 (1967) states:

"There are two cases, at least, where details of the complaint may be proved: (1) They may be elicited, on cross-examination, by the defendant; and where this is done only in part, the state on rebutting examination, may then proceed to prove the whole complaint. (2) Where testimony of prosecutrix is sought to be impeached, by attempting to discredit her story, it is permissible, by way of corroboration, for the state to prove such details. *Barnett v. State*, 83 Ala. 40, 44, 3 So. 612."

In the instant case, there is no question as to the identity of the appellant. At no time did the appellant ever deny having intercourse with the prosecutrix; he freely admits it. He contends it was the prosecutrix who propositioned him and enticed him into the sexual act.

The appellant contends that the testimony of Officer Adams that he found the prosecutrix sitting in a chair and crying tends to show the particulars of the complaint. We are of the opinion that such testimony, if tending to show the particulars of the complaint, would fall within the second exception set forth in *Cox*, supra.

In the instant case, the appellant repeatedly attempted to discredit the prosecutrix's story by asking her:

"Q. Isn't it a fact that he wasn't choking you at all?

"Q. Is it not a fact . . . that it was your idea to go around behind this apartment back there?

"A. No, sir.

"Q. Is it not a fact that you stated to the defendant, 'Have you ever had a white woman before?'

"Q. Is it not a fact that you made advances to the Defendant on the way around there?

"A. No, sir.

"Q. When you got to the fence back there was it not your idea to have sexual relations?

"Q. All right. Now, after the defendant got through, after you all got through, is it not a fact that you asked him did he need any money?

"Q. Isn't it a fact that you told him you would give him some money when you got around there if he needed any money and he said, 'Yes.' And when you got around there you found out you didn't have any money and you offered him some pills?

"Q. You didn't tell him that your husband and kids wouldn't be there the next morning, to come back when they weren't there?

"A. No, sir.

"Q. And you would give him some more, not talking about money?

"Q. Is it not a fact that you told the defendant not to come back as long as that black and white car was parked out there on the curb?

"Q. Is it not a fact . . . that you were afraid your husband had seen you out there talking to this black boy and you went inside and fabricated all this rape story?

"A. No, sir. That's not true.

.     .     .     .     .     .

"Q. Is it not a fact that on the porch around there you made some gestures to him and sort of lead him on?

"A. No, sir. That's not true.

"Q. He walked around the house with his arm around you on your shoulder?

"A. No, sir.

.     .     .     .     .     .

"Q. That you came back talking and laughing or talking in a casual way, is that not a fact?

.     .     .     .     .     .

"Q. Is it not a fact that you enjoyed having sex with this man and reached a climax?

.     .     .     .     .     .

"Q. Is it not a fact that you stated under oath at the preliminary hearing that you and the defendant embraced each other at the time that he left, the last occurrence, the night this happened?"

In addition to attempting to discredit the prosecutrix's story by the above leading questions, counsel for appellant cross-examined her as to her mental and physical state:

"Q. And you were upset and hysterical and you were—had your senses enough to think to tell this man to come back the next morning, is that correct?

"MR. SOMERSET: Judge, the question is argumentative. I object to it in that form.

"COURT: Overruled.

"Q. You can answer the question.

"A. Would you repeat it, sir?

"Q. You were nervous and upset during this situation that you had enough control of yourself to think ahead and tell this man to come back the next morning, is that correct?

"A. No, I didn't tell him to come back. He said he would come back, I told him it would be o.k. to come back, that I would have some money.

.     .     .     .     .     .

"Q. Were you injured in any other way?

"A. What do you mean, injured?

"Q. You stated your neck was bruised or something.

"A. Yes. My neck was bruised and he had held me so tight that my tongue, I had bitten my tongue and bruised it.

"Q. Were you bleeding?

"A. Yes, sir. My tongue was bleeding."

█ Counsel for the appellant by attempting to discredit the prosecutrix's story, and by going into her mental and physical state on cross examination, opened the door for the State, for purposes of corroboration, to prove the details of the complaint and to show the appearance of the prosecutrix at the time the complaint was made. *Cox,* supra; *Barnett v. State,* 83 Ala. 40, 3 So. 612 (1887).

The trial court sustained the appellant's objection to Officer Adams' statement that, "She was hysterical like." Counsel for appellant then moved for a mistrial which was overruled. In light of the above discussion, we are unable to find that a mistrial should have been granted.

### III

On cross examination, the appellant admitted to having sex with one other white woman in Oregon, but stated that he had never attempted to have sex with another white woman except the prosecutrix. The State then called Emily Lofty as a witness. She testified that she was an employee of a Huntsville motel on January 22, 1975. She stated that on that date, the appellant

came into a room which she was cleaning and asked for someone named Mr. Bob. She told him she did not know anything about a Mr. Bob. She said the appellant then started toward her and told her not to scream. She further stated that, "He started toward me and he said, if you scream I will kill you. So he started choking me." She testified that she was able to break away from him and ran to the office. The attack took place five days prior to the alleged rape of the prosecutrix.

In *Chambers v. State*, 264 Ala. 8, 84 So. 2d 342 (1955), Mr. Justice Merrill stated:

"We are cognizant of the line of cases holding that in prosecution for a particular offense, evidence, as to the guilt of the accused of another distinct offense, unconnected with the one charged, is not admissible as substantive evidence to prove guilt of the offense charged. 6 Ala.Digest, Crim.Law, Key 369(1). However, when the accused takes the stand to testify in his own behalf, he does so in a dual capacity—(1) as the accused and (2) as a witness. In his capacity as a witness his credibility may be impeached in the same way or ways in which the credibility of any other witness may be impeached. *Stone v. State*, 208 Ala. 50, 93 So. 706; *Pitts v. State*, 261 Ala. 314, 74 So.2d 232. 'A defendant, who testifies for himself as a witness, may be impeached in the same manner as other witnesses, by showing that he has been convicted of crime involving moral turpitude, or that he has made contradictory statements, or that he is a person of bad character.' *Carpenter v. State*, 193 Ala. 51, 69 So. 531, 532; *Gast v. State*, 232 Ala. 307, 167 So. 554; *Vaughn v. State*, 235 Ala. 80, 177 So. 553; Title 7, § 435, Code 1940."

Other exceptions to the rule against allowing evidence of collateral crimes are listed in Wharton's Criminal Evidence, Section 31:

"These exceptions fall under the following general divisions: (1) Relevancy as part of the res gestae. (2) Relevancy to prove identity of person or of crime. (3) Relevancy to prove scienter, or guilty knowledge. (4) Relevancy to prove intent. (5) Relevancy to show motive. (6) Relevancy to prove system. (7) Relevancy to prove malice. (8) Relevancy to rebut special defenses. (9) Relevancy in various particular crimes. It is recognized that in many instances the line of demarcation is not clear, but the discretion vested in the trial judge, intelligently and considerately exercised, will enable the prosecution fully to present the charge, on the one hand, and, on the other hand, to protect the accused and secure to him the rights guaranteed to him by the Constitution and the laws."

In the instant case, the prosecutrix contends she was raped. The appellant contends that the sexual intercourse was voluntary and in fact was at the urging of the prosecutrix. Since the intercourse is admitted, the sole question for the jury was whether the act was committed by force or whether it was voluntary. When the appellant took the stand, he denied ever attempting to have sex with white women other than the prosecutrix and a woman in Oregon. He was certainly subject to being impeached on that statement alone. Additionally, his testimony would lead one to believe that he in no way used any force on the prosecutrix, but was an innocent victim of her lust. The testimony of Emily Lofty, that she was attacked by this same appellant five days prior to the alleged attack upon the prosecutrix, should be relevant to show motive and intent or to rebut the appellant's defense that the act was voluntary. We are of the opinion that the trial court did not err in admitting the testimony of Emily Lofty. See *Hogue v. State*, 54 Ala.App. 682, 312 So.2d 86, and cases cited therein.

## IV

Appellant contends that the trial court erred in refusing Requested Charges No. 32 and 33, which were as follows:

"DEFENDANT'S REQUESTED CHARGE No. 32

"I charge you ladies and gentlemen of the jury that if you believe from the evidence that the conduct of the prosecutrix was such toward defendant, at the time of the alleged rape, as to create in the mind of the defendant the honest and reasonable belief that she had consented, or was willing for the defendant to have connection with her, then you must acquit the defendant.

"Refused
"Thomas N. Younger
"Circuit Judge

"DEFENDANT'S REQUESTED CHARGE No. 33

"I charge you, ladies and gentlemen of the jury, that in a case of rape, the consent given by the prosecutrix may be implied as well as expressed, and the defendant would be justified in assuming the existence of such consent if the conduct of the prosecutrix towards him at the time of the occurrence was of such a nature as to create in his mind the honest and reasonable belief that she had consented by yielding her will freely to the commission of the act. Any resistance on the woman's part falling short of this measure would be insufficient to overcome the implication of consent.

"Refused
"Thomas N. Younger
"Circuit Judge"

The appellant contends that both charges, dealing with consent, have been approved in other cases and should have been given. The identical issue concerning such charges arose in *Rhoden v. State,* 49 Ala.App. 605, 274 So.2d 630 (1973). In that case, this Court held the requested charge on consent to have been properly refused as it was substantially covered in the trial court's oral charge to the jury. Although the charge there had been approved in *McQuirk v. State,* 84 Ala. 435, 4 So. 775, and *Allen v. State,* 87 Ala. 107, 6 So. 370, this Court found the court's oral charge to have sufficiently covered the element of consent.

In the instant case, we find the trial court's oral charge to be more comprehensive concerning consent than that given in the *Rhoden* case.

The trial court's oral charge here, was in pertinent part as follows:

"Rape is the unlawful carnal knowledge of a woman *forcibly and without her consent.* The carnal knowledge of a woman *forcibly and against her will.* Rape is the having of unlawful carnal knowledge by a man of a woman *forcibly where she does not consent.* To sustain an indictment for rape, proof of actual penetration is sufficient when the act is shown to have been committed *forcibly and against the consent* of the person on whom the offense was committed.

"The elements (sic) of rape then is, proof of an actual penetration committed *forcibly against the consent* of the person upon whom it was committed. Force need not be actual physical force. It may be, but it need not be. It is sufficient if it is a *constructive force* such as *duress* or being put in *fear. Overcoming the resistance* of the woman is an indispensable element of the offense of rape. *Overcoming the resistance* of a woman is complete when the woman is made to *yield through fear* and *does not consent voluntarily,* whether or not the apprehension of bodily harm is reason-

able. One who *by force and against the consent* of the female has sexual intercourse with her, is guilty of rape. The law does not require that the degree of force must be such as to place the woman under the reasonable apprehension of death or serious bodily harm, but the offense is complete if the female is *under such duress as that the act is accomplished against her consent.*

"*Consent which will be sufficient assumes a mental capacity in the person consenting to the extent that she understands and appreciates the nature of the act of sexual intercourse, its character and the probable or natural consequence which may attend it.*" (Emphasis supplied).

■ We, therefore, are of the opinion that consent was adequately and substantially explained to the jury, therefore, obviating the necessity to give the repetitious charges requested. Title 7, § 273, Code of Alabama 1940.

V

Appellant next contends the trial court erroneously refused to give Requested Charges 37 and 38, dealing with the issue of consent prior to penetration:

"DEFENDANT'S REQUESTED CHARGE No. 37

"I charge you ladies and gentlemen of the jury that where a man takes hold of a woman against her will and she afterward consents to intercourse before the act is committed, his act is not rape.

"Refused
"Thomas N. Younger
"Circuit Judge

"DEFENDANT'S REQUESTED CHARGE No. 38

"I charge you ladies and gentlemen of the jury that to sustain a charge of rape, the female must not at any time consent

prior to penetration; her consent, given at any time prior to penetration, however reluctantly given, or if accompanied with mere verbal protest and refusals, prevents the act from being rape, provided the consent is willing and free of initial coercion.

"Refused
"Thomas N. Younger
"Circuit Judge"

■ The appellant, in his testimony, never contended that he used force and that afterward, the prosecutrix consented. He at all times during his testimony stated that the prosecutrix originated the idea of having sex and that he merely acquiesced. He did not claim that he used force when he first approached her on the porch. His testimony was that he put his arm around her shoulder which startled her. He said she then smiled at him and asked where he was going, and he told her he was going to his sister's house. He asked if she wanted to go for a walk, and she agreed. He said he did not have his arm around her neck, did not threaten her in any way and did not force her in any way to have sexual relations.

The prosecutrix testified that the entire episode, from beginning to end, was accomplished through force and at no time did she ever freely consent. Under this state of testimony, we find no evidence in the record suggesting that after force was used that the prosecutrix changed her mind, ceased to resist and consented to intercourse free of the initial coercion. Therefore, Charges 37 and 38 would be misleading and not based upon the evidence, and thus were properly refused.

It is contended that the refusal of Charge 40 was likewise erroneous. Charge 40, which dealt with lesser included offenses is as follows:

"DEFENDANT'S REQUESTED CHARGE No. 40

"I charge you ladies and gentlemen of the jury that in a charge of rape there are included the following offenses: Assault with intent to Ravish and Assault and Battery.

"Refused
"Thomas N. Younger
"Circuit Judge"

There were two separate and distinct stories rendered by the prosecutrix and by the appellant. She said it was rape, and he said it was not. His testimony as to first touching her on the porch does not suggest assault with intent to ravish. The essence of his story was that he was merely asking if she *wanted* to go for a walk and that sex was suggested by her and was her idea. The testimony from neither party suggests an assault where penetration was either not accomplished, or where there was an assault, but consent occurred prior to penetration.

Under the evidence, the jury could either believe the prosecutrix, in which case the appellant would have been guilty of rape, or they could have believed the appellant, in which case he was guilty of nothing. Requested Charge No. 40 was, therefore, properly refused. *Kilpatrick v. State,* 51 Ala.App. 352, 285 So.2d 516 (1973).

Affirmed.

All the Judges concur.