146 So. 422

## WILLIAMS v. STATE.
### 4 Div. 917.

Court of Appeals of Alabama.
Feb. 21, 1933.

E. O. Baldwin, of Andalusia, for appellant.

Thos. E. Knight, Jr., Atty. Gen., for the State.

Brief did not reach the Reporter.

SAMFORD, Judge.

The indictment charged that defendant, a negro, or the descendant of a negro, did live together with Bessie Batson (alias, etc.), a white person, in a state of adultery or fornication.

This defendant is a man about twenty-three years of age, and is the son of a white woman, who, at the time of the birth of defendant, was legally married to, and was living with, Amer Williams, a white man. About two weeks after the marriage of Amer Williams and this defendant's mother, who was Fronie Lundy before her marriage to Williams, this defendant was born, and from his birth until the present he has lived with his mother, brothers and sisters, grandparents, uncles and aunts, and tenants on the farm of the grandfather, all of whom were white people without taint of negro blood. Per contra, the state introduced as witnesses an old midwife and an eminent local physician, who testified, after qualifying as experts, that they had made examination of defendant in his infancy and from certain infallible signs found on his body they found him to be a person of negro blood.

There was no act of cohabitation directly proven, but the state introduced two very willing witnesses, who testified to a state of facts from which the acts of cohabitation might be legally inferred, and also an agreement to continue such illicit relations. This testimony was thoroughly discredited, not only on account of the unnatural and flagrant acts testified to by them, but by the overwhelming weight of the evidence tending to prove their testimony to be untrue.

No evidence was introduced tending to prove an illicit relation between defendant's mother and a negro man, other than the fact that there was an old negro man living with defendant's grandfather prior to and at the time of the birth of defendant, and the further facts as testified to by the experts that defendant had negro blood, and other testimony that he now was dark skinned and had black curly hair and resembled a negro.

■ While several of defendant's witnesses were being examined by the solicitor, the solicitor was permitted to ask the witnesses: "Does he look like a white person?" "Does he look like a white man?" "Would you say that he looks like a white person?" These questions, while asked during cross-examination, were not seeking to cross-examine the witnesses as to any facts to which they had testified. Without having been qualified as to a knowledge of the characteristics of the white race, these questions called for conclusions, and were improper. Weaver v. State, 22 Ala. App. 469, 116 So. 893.

■■ The following statement appears in the bill of exceptions:

"In his closing argument to the jury, the solicitor for the state, made the following statement: Since the days of the Carpetbagger colored people have thought, and still think, that they are as good as a white man. To that argument, the defendant duly and legally excepted. The court sustained the objection and made the following statement to the jury: I instruct the jury not to consider it. The defendant, because of the above argument, by the solicitor, to the jury, moved the court to withdraw the case from the jury. The court overruled the defendant's motion to withdraw the case from the jury and the defendant duly and legally excepted. Again, in his closing argument to the jury, the solicitor made the following statement: Down here in the south there are a few white people and

a great number of colored people, and we should keep the colored man in his place. The defendant objected to this argument, the court overruled the objection and the defendant duly and legally excepted. In his closing argument to the jury, the solicitor made the following statement: Possibly a way back, there was a situation that obtained, where some white person was thrown in a similar situation, that caused the passage of this statute. To this argument to the jury, the defendant·objected, the court overruled the objection and the defendant duly and legally excepted. The solicitor continued in his closing argument to the jury and made the following statement: They were brought over here by the ship loads. Some negro men, brought from the jungles of Africa, took that white woman and ran off with her—took that woman and lived in adultery with her. The defendant objected to this argument to the jury, and the court made the following statement: Yes, that is not proper argument. You will not consider it, gentlemen. Mr. Reid you will have to get off that character of argument.

"The solicitor continued in his closing argument to the jury; making the following statement: This man, gentlemen of the jury, a man of maturity, a man that knows that this law exists, a man that can't help but know it, a man, gentlemen of the jury that has stumbled up against it before. The defendant objected to this argument, the court overruled the objection and the defendant duly and legally excepted. The solicitor for the state still continued in his closing argument to the jury making the following statement: And he takes this woman in the face of it, under the protest of the white people in that community and he parades her up and down the street, off in the woods, and says: Do what you can about it. And he does it, gentlemen of the jury for a period of several months, until there could be convened in this temple of justice eighteen good men, a grand jury of this county, who says to you that, we are going to do what we can to stop it. The defendant objected to this argument, the court overruled the objection stating that it was merely an inference and the defendant duly and legally excepted. The solicitor for the state continued in his closing argument to the jury, making the following statement: And then, gentlemen of the jury. up here last year, the first time we see Jesse Lundy, and as the testimony discloses before this jury, the very first time he is in company with a white woman. The defendant objected to this argument and when the defendant objected, the court made the following statement: I will let the jury pass on whether or not that is the testimony, and to this argument and to the statement of the court, the defendant duly and legally excepted. The

solicitor continued his closing argument to the jury, making the following statement: Gentlemen of the jury, old man Joe Lundy has stood back of him. I imagine the old man is trying to beat the law of the land with a negro grandchild. The defendant objected to this argument and moved to exclude it from the jury, the court overruled the objection and the defendant duly and legally excepted. The defendant then moved to withdraw the case from the jury, the court overruled the motion and the defendant duly and legally excepted. The solicitor continued in his closing argument to the jury, making the following statement: Gentlemen of the jury, the desire has existed in this man's brain, years and years, to have intercourse with a white woman. The defendant objected to this argument, the court overruled the objection and the defendant duly and legally excepted."

There are several reversible errors shown in the above statement regarding rulings made by the trial court during the closing argument of the solicitor. Moreover, when considered as a whole it discloses an argument filled with an appeal to that race prejudice, so easily aroused and so hard to control, when it relates to sexual intercourse between a negro man and a white woman. Such statements as those used by the solicitor in connection with his closing argument were of the kind that arouses passion, dethrones reason and judgment, and should never be indulged in by a prosecuting officer, or permitted by a trial court.

The law guarantees to every defendant, white or negro, a fair and an impartial trial, free from undue appeals to passion or prejudice, and when it appears that a defendant may not have had such trial by reason of the arguments of the solicitor, upon proper presentation of the questions this court will remand the cause for another trial. In this case, on motion of defendant, the court should have withdrawn the case from the jury, entered a mistrial, and continued the case. Pointer v. State, 24 Ala. App. 23, 129 So. 787: Harris v. State, 22 Ala. App. 121, 113 So. 318; Jones v. State, 21 Ala. App. 234, 109 So. 189; Moulton v. State, 199 Ala. 411, 74 So. 454.

Where state has offered evidence tend-. ing to prove the flight of defendant, the de fendant may show all the circumstances attending it, to show defendant's motive in leaving his home at the time he did. Gilbert v. State, 20 Ala. App. 28, 100 So. 566; Wilson v. State, 20 Ala. App. 137, 101 So. 417.

For and on account of the prejudicial argument of the solicitor and the erroneous rulings·of the court thereon, the judgment is reversed, and the cause is remanded.

Reversed and remanded.