[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1044 
On May 25, 1983, Dana Constance Fowler left her place of employment at the Down the Street Restaurant in Birmingham, Alabama, to go home for the evening. The next morning, her battered corpse was found lying alongside a road in rural Jefferson County. She had been shot twice in the head with a .38 caliber pistol. The appellant, James Donald Lowe, who worked with the victim at the restaurant, was later charged with the murder. After being tried and found guilty of intentionally killing Miss Fowler in violation of §13A-6-2, Code of Alabama 1975, Lowe was sentenced by the trial court to life imprisonment.
 I
Pending trial, the appellant was released from the county jail on bond. He subsequently left Alabama and went to Rhode Island, where he lived for several months under an assumed name until he was apprehended and returned to this state to stand trial. Upon his return, the appellant then related shortly before he left Alabama he was abducted from his home by two men whose identity was unknown to him. According to the appellant, he escaped and fled to Rhode Island because he was afraid of being harmed by these persons. The appellant also told the authorities that his flight had been prompted by his being bothered by news reporters and police officials. He said these people were seeking information concerning a police department investigation of alleged wrongdoing by Birmingham Police Chief Arthur Deutsch. Deutsch had been accused by an officer of beating up appellant Lowe in order to extract a confession from him. The appellant stated that he was tired of being repeatedly asked about the incident and had left Alabama to get away from "all of the mess." This is the testimony he proposed to give at trial.
During trial the prosecution offered evidence of the appellant's flight to Rhode Island for the purpose of showing consciousness of guilt. Bighames v. State,440 So.2d 1231 (Ala.Cr.App. 1983). To explain or justify his flight, the appellant introduced evidence concerning the alleged abduction. However, the trial court refused to permit the introduction of evidence concerning harassment by the news media and internal affairs officers who were seeking information about the Deutsch affair. The following discussion between the court and defense counsel occurred outside the presence of the jury.
 "MR. PURVIS: In the interest of saving time, if they are fixing to go into the fact that he was — Mr. Gaut went to Rhode Island, they're getting into an area where they're going to prove flight, then I think it opens the door for everything about Chief Deutsch, the reason for flight. I think it opens the door for us to go into every single thing that happened between the time he was picked up on the 1st, back in June of 1983 up until this point Mr. Gaut went after him.
 "THE COURT: Well, I don't think so. I'm not going to let it in, except you've already gone into the abduction. I've thought a lot about this. I've given this plenty of thought. I'm going to let them go into it. I'm going to let them — let you when your turn comes to go into the *Page 1045 
alleged abduction or whatever it was because you've got testimony about it from this Mr. Fowler. I'm not going to let it go into Chief Deutsch.
"MR. PURVIS: That's part of it.
"THE COURT: It might be. I don't think it is.
 "MS. VINSON: According to some of the cases we have researched that when the state has introduced evidence of flight, which they have already done in this case, then the defendant is entitled to show the court any other pictures that has motivated him to leave. [sic]
"THE COURT: I'm well aware of that.
 "MS. VINSON: To show that it is not a consciousness of guilt on a crime that he's charged with.
 "THE COURT: I intend to charge the jury — if I charge on flight I intend to tell them that almost very thing, that this is a question for the jury. It is a question as to what prompts this flight. They are going to have all that I think are pertinent and admissible, namely, the fact that he was — that I think, one, that he went to the Internal Security, period. Two, that he had the abduction. He thought that — you're going to bring it out. He thought — I don't know whether he's going to testify or not. He's already got in some testimony — maybe it is before the jury. Yes, it is.
 "MR. PURVIS: His testimony is not before the jury.
 "THE COURT: Yes, he did. That witness Giles said he thought he was going to be kidnapped. When it comes time for this flight charge I expect to enlarge on it to make them understand it's a question for them. Don't you worry, I'm going to have it. I've already thought about this business for 3 weeks.
 "MS. VINSON: Your Honor, if you're going to charge them to take into [consideration] other facts surrounding flight then they are entitled to know all of the facts surrounding flight.
 "THE COURT: I don't think that thing is material to go into. I don't know whether or not that prompted it. As a matter of fact, we know from a practical application — I hear you. I've thought about it. I'm going to let it in. I'm only going to let in, one, Internal Security; two, the abduction; three, the flight, if it be a flight. I'm telling the jury very specifically what the law is. That's going to be it."
The law is well settled in Alabama that whenever the state has introduced evidence tending to show flight by the accused, the accused is permitted to rebut the inference that he fled out of a consciousness of guilt by introducing evidence to explain his reason for flight. Mitchell v.State, 53 Ala. App. 625, 303 So.2d 123 (Ala.Cr.App.), cert. denied, 293 Ala. 767, 303 So.2d 126 (1974); Jonesv. State, 52 Ala. App. 184, 290 So.2d 251 (Ala.Cr.App. 1974); Green v. State, 258 Ala. 471, 64 So.2d 84
(1953); Peoples v. State, 256 Ala. 612, 56 So.2d 665
(1952). Such evidence must, of course, have some tendency to prove the thing for which it is offered. Jones v.State, 52 Ala. App. at 190. Alabama case law indicates, however, that the accused is to be given wide latitude in presenting evidence as to his motivation for flight. C. Gamble, McElroy's Alabama Evidence, § 190.02(2) (3d ed. 1970). "Where [the] state has offered evidence tending to prove the flight of defendant, the defendant may show all the circumstances attending it, to show defendant's motive in leaving his home at the time he did."Williams v. State, 25 Ala. App. 342, 344, 146 So. 422
(1933) (emphasis supplied). Similarly, in Green v.State, 258 Ala. at 477, the Alabama Supreme Court ruled that where evidence of the defendant's flight has been presented, "any fact or circumstance may be shown as shedding light on the defendant's motive in fleeing." (emphasis supplied). The question which we are asked to resolve in the present case is whether the evidence concerning a police department internal affairs investigation into the conduct of an officer was admissible in this case. Appellant urges that it would explain his motive for fleeing to Rhode Island. "Evidence is relevant if it has any probative value, however slight, upon a matter at issue in the case." Phelps v. State, 439 So.2d 727, 736
(Ala.Cr.App. 1983); *Page 1046 
"Evidence is relevant if it has 'any tendency to throw light upon the matter in issue, even though such light may be weak and fall short of demonstration.' " Austin v. State,434 So.2d 289, 292 (Ala.Cr.App. 1983). The trial court apparently made a factual determination that harassment by the news media and law enforcement officials would not cause an individual to leave his home and go to another state. Such an act might not be a typical response for the average person. Nevertheless, a person's motivation for flight need not be rational to be admissible. Whether the evidence is sufficient to negate the inference that he fled because of a consciousness of guilt is a question for the jury, not the court. In Goforth v. State, 183 Ala. 66, 63 So. 8
(1913), the court stated:
 "The question as to why the defendant left the community and remained away from it becomes a question for the jury, and so, when the state offers the fact of the defendant's flight from the community in evidence, the law allows both the state and the defendant to show all those things which the defendant said and did when he left, and while away from the community, which tend to explain the quo animo of the flight, whether the absence of the defendant was due to his sense of guilt, or his desire to avoid, or through fear of, arrest, or on the other hand, whether his absence was due to other causes."
Since the circumstances surrounding the police department internal affairs investigation were relevant, the evidence should have been presented to the jury for its consideration. The court erred, therefore, in excluding such evidence. We do not believe, however, that the exclusion of that evidence prejudiced the substantial rights of the appellant. This conclusion is premised upon two separate foundations. First, the appellant was allowed to present evidence that he fled to Rhode Island because he was afraid of being killed by the two men who had allegedly previously attempted to abduct him. This evidence, if believed, might be sufficient in itself to negate the inference that he fled the state out of a consciousness of guilt. If believed by the jury, this reason was the more plausible reason for his flight. See,Webster v. State, 211 Ala. 519, 101 So. 183 (1924), in which the exclusion of certain testimony by defendant was held to be harmless error where defendant was allowed to introduce more substantial evidence tending to explain his flight.
The evidence of the appellant's guilt, though circumstantial, was overwhelming. At the time of the appellant's arrest in October of 1983 on an unrelated charge, he had in his possession a .38 caliber pistol. Lawden Yates, a criminologist with the Alabama Department of Forensic Sciences, examined the weapon and determined that it was the pistol which had fired the bullets that killed the victim. In addition, Brenda Noble, a former girlfriend of the appellant, testified that shortly after the murder she had seen the appellant driving the victim's automobile. Ms. Noble stated that the appellant had a cut on his forehead. When she asked him how he had gotten the cut, he replied that the less she knew about it the better off she would be. The appellant instructed Ms. Noble to get into the automobile but cautioned her not to touch anything. According to Ms. Noble, they drove to a Church's Fried Chicken restaurant located approximately one block from the restaurant where the appellant and the victim had worked. The appellant's station wagon was parked in Church's parking lot. Ms. Noble testified that the appellant instructed her to wait for him in his car, and then drove off in the decedent's automobile. He returned on foot. The day after the victim's murder, her automobile was found parked outside the restaurant where she worked. In light of the foregoing powerful evidence of the appellant's guilt, we find that exclusion of the additional evidence to justify his going to Rhode Island did not prejudice his substantial rights. Rule 45, A.R.A.P.
 II
The appellant next argues that the trial court erred in not permitting him to fully cross-examine state witness Sergeant Gay *Page 1047 
as to his bias or prejudice. Sergeant Gay was the officer placed in charge of investigating the Fowler murder. Shortly after the appellant was arrested, he was taken to police headquarters for questioning by Sergeant Gay. During the interrogation Gay left the appellant alone to go get a drink of water. Police Chief Deutsch entered the room to personally interrogate the appellant. Sergeant Gay, who was standing outside of the room, testified that soon after Deutsch entered he heard a lot of "noise and commotion" coming from inside. Sergeant Gay subsequently filed a statement concerning the incident in which he apparently accused Deutsch of assaulting the appellant. The record indicates that after Sergeant Gay had filed his report the appellant was asked to confirm the report that Chief Deutsch had physically abused him. The appellant then refused to verify the report. Appellant Lowe argues that his refusal to make a statement concerning the incident was against Sergeant Gay's interest and caused Gay to be biased against him. There is also some evidence in the record tending to suggest that soon after the investigation of his accusation, Sergeant Gay took his retirement and that there was a connection between the accusations he had lodged against Police Chief Deutsch and his retirement.
Generally, great latitude is allowed on cross-examination in order to discover possible bias of a witness. McLarenv. State, 353 So.2d 24 (Ala.Cr.App.), cert. denied,353 So.2d 35 (Ala. 1977); Wells v. State, 292 Ala. 256,292 So.2d 471 (1973). A defendant is entitled to question a witness as to any matter which might tend to show bias either against him or in favor of the prosecution. Rogers v.State, 54 Ala. App. 13, 304 So.2d 255 (Ala.Cr.App. 1974);Frazier v. State, 365 So.2d 339 (Ala.Cr.App. 1978). This right is not an unqualified one. Evidence offered for the purpose of showing a witness's bias is admissible only where it is "material, relevant and not too remote to the issues presented." Hembree v. City of Birmingham,381 So.2d 664, 688 (Ala.Cr.App. 1980). In the case subjudice, the trial court ruled that the testimony sought to be elicited by defense counsel had no tendency to show Sergeant Gay's bias against the appellant. The range of cross-examination to determine bias of a witness is generally a matter within the trial court's discretion and its ruling will be reversed only where an abuse of discretion is shown.Elmore v. State, 445 So.2d 943 (Ala.Cr.App. 1983). Under the facts of this case, we find that the trial court did abuse its discretion, however, in not allowing the defense to fully question Sergeant Gay about his possible bias.
 "Evidence to show bias or interest of a witness in a cause covers a wide range and the field of external circumstances from which probable bias or interest may be inferred is indefinite. The rule encompasses all facts and circumstances which, when tested by human experience, tend to show that a witness may shade his testimony for the purpose of helping to establish one side of the cause only. Facts wholly immaterial, or prejudicial to one of the parties on the main issue, may be material as affecting the credibility of a witness." Ellis v. Capps, 500 F.2d 225, 227 (5th 1974).
The appellant's refusal to corroborate Sergeant Gay's accusations against Chief Deutsch could certainly have colored the Sergeant's view of appellant Lowe. The defense should, therefore, have been permitted to further develop the witness's testimony to show bias.
Although we hold that the trial court erred in not allowing the defense to question Sergeant Gay concerning possible bias against the appellant, we find that the error was without injury to the substantial rights of the appellant. Rule 45, A.R.A.P. As stated in our discussion of the previous issue, the evidence of the appellant's guilt was overwhelming. Moreover, Sergeant Gay's testimony was inconsequential to the state's case against appellant Lowe. The prohibition against restricting a defense counsel's cross-examination to show bias is based on the Confrontation Clause of the Sixth Amendment. Delaware v. Van Arsdall, 473 U.S. 923,105 S.Ct. 3552, 87 L.Ed.2d 674 (1986). *Page 1048 
Even this right, however, may be subjected to harmless error analysis, the Supreme Court saying in VanArsdall that ". . . in the context of a particular case, certain constitutional errors, no less than other errors, may have been 'harmless' in terms of their effect on the factfinding process at trial." Citing with approvalChapman v. California, 386 U.S. 18, 87 S.Ct. 824,17 L.Ed.2d 705 (1967), the court, speaking through Justice Rehnquist, explains:
 "The harmless error doctrine recognizes the principle that the central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence, United States v. Nobles, 422 U.S. 225, 230 [95 S.Ct. 2160, 2166, 45 L.Ed.2d 141] (1975), and promotes public respect for the criminal process by focusing on the underlying fairness of the trial rather than on the virtually inevitable presence of immaterial error." (Emphasis supplied.)
The Supreme Court listed some of "a host of factors" to be considered: the importance of the witness's testimony to the prosecution's case; whether the testimony was cumulative; the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points; the extent of cross-examination otherwise permitted; and the overall strength of the prosecution's case. Even if Gay's testimony had been totally discredited, no benefit would have resulted to the appellant.
 III
Last, the appellant contends that the trial court erred in permitting the state to cross-examine him about a bond made in another case. The questions objected to by the appellant are as follows:
"Q: Have you ever heard of Okay Bonding Company?
"MS. VINSON: I object, Your Honor.
"THE COURT: What?
 "MR. PURVIS: He said Okay Bonding Company. He's trying to bring out something that's unrelated totally to this case.
"THE COURT: Well, I don't know that.
"MR. PURVIS: Prejudicial to the jury.
"THE COURT: It's cross-examination.
 "MR. PURVIS: Well, I think we probably ought to have a voir dire on it.
"THE COURT: I'm not having any voir dire.
 "MS. VINSON: Can we approach the bench and talk to you?
 "THE COURT: No, ma'am. I'm just saying overruled. Go ahead. If it looks like it's immaterial when I get to it I'll so rule. Right now he can ask that question and let him ask it.
 "Q: Have you ever heard of Okay Bonding Company in Bessemer?
"A: I think I have, yes, sir.
 "Q: Is this man's name that I just asked you about Perry Galemore?
"A: I do not know the man.
 "Q: Did he work there or did he own Okay Bonding Company?
"A: I couldn't say. I do not know.
"Q: Did he ever go on a bond for you?
 "MR. PURVIS: I object to all that. That's immaterial.
"THE COURT: Overruled.
"A: I cannot say. I do not know.
 "Q: Did he ever go on a bond for you on a case you had in Bessemer?
"MS. VINSON: Your Honor, we object.
"A: No."
It is well settled law that the prosecution may not introduce evidence of a defendant's prior crimes for the purpose of showing the defendant's general bad character or his propensity to violate the law. Ex parte Weeks,456 So.2d 404 (Ala. 1984); Ex parte Baldwin,456 So.2d 129 (Ala. 1984). Although the questions asked by the prosecution in this case do not constitute a direct comment on the appellant's prior criminal record, the jury could have reasonably inferred that the appellant had previously been arrested for a different offense. We find, however, that error, if any occurred, did not injure the substantial rights of appellant Lowe. Rule 45, A.R.A. P. Our finding of harmless error is in part based upon the fact that the defense had *Page 1049 
already mentioned the appellant's prior arrest for burglary. During cross-examination of Officer Gaut the following questions were asked by the appellant's trial counsel.
 "Nobody from Internal Affairs, nobody from the Police Department came to you and said Mr. Gaut, we found an outstanding warrant for James Lowe on a burglary case? You being the investigating officer and you say the only thing you were doing was concentrating on this man. Nobody came to you and talked to you about any burglary warrant or about they wanted to talk to him or anything, did they?
". . . .
 "Do you even know what happened to the burglary case that he [appellant Lowe] was picked up on by Internal Affairs, Mr. Gaut?"
Since the appellant, of his own volition, had already commented on his prior burglary conviction, no reversible error resulted by virtue of the prosecution's reference to the bond. McClellan v. State, 452 So.2d 909
(Ala.Cr.App. 1984); Crittenden v. State,414 So.2d 476 (Ala.Cr.App. 1982).
In addition, when asked about the bond and the bonding company, appellant Lowe responded in the negative. "[A] negative response from a witness to questions relating to the accused's prior misconduct is harmless." Wyrick v.State, 409 So.2d 969, 974 (Ala.Cr.App. 1981); see also,Reeves v. State, 456 So.2d 1156 (Ala.Cr.App. 1984);Coleman v. State, 452 So.2d 1355 (Ala.Cr.App. 1984). Furthermore, the evidence of the appellant's guilt was, as we have already observed, overwhelming. The reference to the bond did not, therefore, prejudice the appellant's right to a fair trial. Rule 45, A.R.A.P.
Consequently, the appellant's conviction is due to be, and it hereby is, affirmed.
AFFIRMED.
All the Judges concur.